[No. 12544. Department Two. — December 4, 1889.]

## EDWARD LORD, RESPONDENT, v. JACOB GOLD-BERG ET AL., APPELLANTS.

APPEAL — DISMISSAL — SUPREME COURT— APPELLATE JURISDICTION — COUNTERCLAIM LESS THAN THREE HUNDRED DOLLARS. — The appellate jurisdiction of the supreme court is in no way dependent upon a counterclaim set up by the defendant, and a motion to dismiss an appeal on the ground that the demand of defendants upon their counterclaim does not amount to the sum of three hundred dollars will be denied. Where the action is brought to recover a money demand exceeding three hundred dollars, the *ad damnum* clause of the complaint is the test of jurisdiction; and

if the amount sued for is large enough to give the superior court juris-
diction, the supreme court has jurisdiction on appeal, regardless of
whether the appeal is taken by the plaintiff or the defendant.

MASTER AND SERVANT — CONTRACT FOR PERMANENT HIRING. — In a contract
of hiring an agreement by the employer that the employment shall be
permanent so long as the employee desires to make it so, in considera-
tion of the employee using his best efforts to extend the business, does
not mean that the employment is intended to be for life or for any fixed
or certain period, but only that it is to continue indefinitely, and until
one or the other of the parties should wish, for some good reason, to
sever the relation.

ID. — CHANGE OF COMPENSATION — MINIMUM SALARY — REPRESENTATIONS
OF EMPLOYER — DISMISSAL FOR CAUSE — VOLUNTARY LEAVING OF EM-
PLOYMENT. — A contract of permanent employment which contemplates
a change of compensation as business may be increased, the compensa-
tion being fixed at a minimum salary, owing to the representations of
the employee as to the business at his command, justifies the employer
in refusing to continue the employment unless the employee will accept
for his services a fair and ratable proportion of profits actually arising
from the business controlled by him, if his representations have proved
untrue, and the business does not justify the paying of the minimum
salary promised; and if such offer is made and refused, the leaving of the
employment by the employee will be deemed voluntary.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion.

*Jarboe, Harrison & Goodfellow,* for Appellants.

*Henry Perry,* for Respondent.

BELCHER, C. C.—The plaintiff brought this action to
recover damages for his wrongful dismissal from the
employment of defendants. It is alleged in the com-
plaint that defendants were carrying on the business of
grocers in the city of San Francisco; that they nego-
tiated with plaintiff to enter into their employment as
solicitor for customers for their groceries, teas, wines, etc.;
and that on the twenty-fourth day of November, 1886, it
was agreed by and between plaintiff and defendants that
in consideration of his entering into their employment as

such solicitor, and using all his efforts to secure certain-named persons as customers, and to extend their business, "they would give him permanent employment so long as he should use his best efforts to extend their business, paying him at the rate of twenty dollars per week, and increase his salary as the business increased"; that plaintiff performed all the conditions of his contract, procured the persons named and others as customers for defendants, and largely increased their profits; but that defendants, on the second day of April, 1887, 'wrongfully, and without just or reasonable cause, dismissed plaintiff from their employment, to his damage in the sum of six thousand dollars, for which he asked judgment.

The answer denied the foregoing allegations of the complaint, and alleged that in November, 1886, they employed plaintiff, upon his representations that he could bring to them orders for groceries amounting to between two thousand and three thousand dollars per month; that it was then agreed that plaintiff should be paid a salary of twenty dollars per week until it could be ascertained what amount of orders he could bring to defendants; that he continued in their employ until about the 9th of April, 1887; that he did not bring to them orders amounting to two thousand dollars, or to any sum exceeding four hundred dollars per month; that the wages paid him at all times exceeded the profits derived from the business brought in by him; that on or about the 1st of April, 1887, defendants proposed to pay plaintiff certain sums in proportion to the business he should bring them, and that he, after taking time to consider the proposition, declined to accept it, and then voluntarily left their employment. Defendants further set up a counterclaim for $251, money lent.

The court found the facts as to the employment and dismissal of plaintiff to be as alleged in the complaint, and that he sustained damage by the dismissal in the

sum of $190, for which sum judgment was entered in his favor. There was no finding as to the counterclaim, or as to any of the affirmative allegations of the answer.

The defendants moved for a new trial, which was denied, and have appealed from the judgment and order.

1. The respondent moves to dismiss the appeal "upon the ground that the demand of defendants upon their counterclaim on file herein does not amount to the sum of three hundred dollars, and that this court has no jurisdiction to hear said appeal."

The motion to dismiss the appeal should be denied. The power of this court to hear and determine the matters in controversy here is in no way dependent upon the counterclaim set up by defendants. Under our present constitution and laws, when an action is brought to recover a money demand, the *ad damnum* clause of the complaint is the test of jurisdiction. If the amount sued for is large enough to give the superior court jurisdiction, the supreme court has jurisdiction on appeal; and this is so whether the appeal be taken by the plaintiff or defendant. (*Dashiell* v. *Slingerland*, 60 Cal. 653; *Bailey* v. *Sloan*, 65 Cal. 387.)

2. It is contended for appellants that the findings were not justified by the evidence, and we think this contention should be sustained. It appears from plaintiff's testimony that he had been in the employment of one Lebenbaum, soliciting orders for groceries, and had been receiving from forty to fifty dollars per month for his services. About the 20th of November, 1886, he saw defendant Goldberg, and was offered by him twenty dollars per week if he would work for defendants, and get for them certain named customers. He then states the arrangement made as follows: "Well, now, says I, while it is a very good increase of salary, will it be permanent, Mr. Goldberg? 'It will,' says he; 'it will last; it will be permanent.'" He further states that he did not go to work for a few days, and that at his request the cashier

of defendants drew up and gave to him a written memorandum of the agreement, which reads as follows:—

"SAN FRANCISCO, November 24, 1886.

"*To whom it may concern:* At the request of Mr. Lord, and to satisfy him, in his own mind, that our intentions are wholly honest as regards his permanency in our employ, we hereby declare that our interests are one, and the greater number of friends and their patronage that he can bring to our store, the greater will be his income from us, and his position is permanent so long as he desires to make it so.

[Signed]          "GOLDBERG, BOWEN & Co."

Continuing, plaintiff testified "that he remained in the employment of defendants until the ninth day of April, 1887, and was paid by them twenty dollars per week until said time; that at said time defendants complained that the business introduced by plaintiff was not sufficient to warrant them continuing the existing arrangements with plaintiff, and stated to plaintiff that they would not do so any longer. The defendants at the same time offered to enter into a written contract with plaintiff, to continue until January following, to pay him one half of the profits which should be derived by them from all hotel, restaurant, and institute business which should be introduced to them by plaintiff, and also ten per cent upon the amount of all family trade, exceeding four hundred dollars per month, introduced to them by plaintiff; that plaintiff, after consultation with his friends, refused said offer, and that the relations between plaintiff and defendants were thereupon severed without further negotiations." He further testified, on cross-examination, "that he had not since leaving the employment of defendants made any efforts whatever to obtain any employment, and that he had not earned anything since leaving defendants."

For the defendants it was proved that in the negoti-

ations relative to the employment of plaintiff, he represented that he could control and introduce to defendants business amounting to between two and three thousand dollars per month, but that the total amount of business introduced to them by him during the whole time of his employment was only seventeen hundred dollars, and that the average profits derived from such business did not exceed ten per cent; that defendants intended, when they employed plaintiff, to retain him in their employment permanently, and that the only reason which induced them to refuse to do so was that the amount of business introduced by him was insufficient to pay the salary provided for.

The foregoing is all the evidence given at the trial material to the point in hand, and it will be observed that the plaintiff in no way denies that he made the representations at the time of his employment which were alleged and proved by defendants. It will also be observed that when plaintiff's attention was called to the fact that he was receiving more salary than the aggregate profits arising from the business he had brought to defendants, and when, after taking the matter under advisement for a time, he refused to accept defendants' offer to pay him a reasonable proportion of the profits to be derived from the business he might bring to them, "the relations between plaintiff and defendants were thereupon severed without further negotiations."

From this it would seem that the plaintiff voluntarily left the employ of defendants, and that he was not, as found by the court, "wrongfully, and without just or reasonable cause, dismissed from their employment."

But however this may be, it is clear that plaintiffs' employment was not intended to be for life, or for any fixed or certain period. It was to be "permanent," but that only meant that it was to continue indefinitely, and

until one or the other of the parties should wish, for some good reason, to sever the relation.

In *Perry* v. *Wheeler*, 12 Ky. 541, the plaintiff was elected permanent rector of a church, and was afterward, as he claimed, wrongfully dismissed. The court said: "Appellant, by his counsel, insists that he was the *permanent* rector of Grace Church, and had the right to retain his position during life, unless he should become incapacitated for the performance of clerical duties by age or disease, or unless he should disqualify himself by immoral or unchristian conduct, or by the abandonment of the faith and practices of the Protestant Episcopal Church. He certainly was elected permanent rector; but we do not understand the term 'permanently,' as used in this case, to mean that the parties were to be bound together by ties to be dissolved only by mutual consent, or for sufficient legal or ecclesiastical reasons. . . . . We understand that Dr. Perry was called as the rector of the church for an indefinite period, and that it was intended he should continue to hold the place until one or the other of the contracting parties should desire to terminate the connection, in which case the dissatisfied party was to have the right to be relieved of further obligations to the other, upon fair and equitable terms, and after reasonable notice."

So in *Elderton* v. *Emmons*, 4 Com. B. 478, it was claimed that the plaintiff was retained and employed as the *permanent* attorney and solicitor of the defendant company, and had been wrongfully discharged. But it was held that the word "permanent," as used in the resolution of appointment, denoted no more than a general employment, as contradistinguished from an occasional or special employment. See also *Newton* v. *Commissioners*, 100 U. S. 548, in which it was held that a county seat was permanently established in a town when it was placed there with the intention that it should remain there.

Moreover, plaintiff's salary was not fixed permanently at twenty dollars per week, but was to be increased as the business increased.    This is shown by the complaint and the memorandum of agreement put in evidence. It was fixed at twenty dollars at first in view of the representations of plaintiff as to the business at his command.    These representations, however, proved not to be true, and the salary was more than the business warranted.

Under these circumstances, and after trying the experiment for about twenty weeks, the defendants were justified, we think, in refusing longer to continue the plaintiff in their employment, unless he would accept for his services a fair and ratable proportion of the profits arising from the business controlled and introduced by him.    But this they offered, and he refused.

We therefore advise that the motion to dismiss the appeal be denied, and that the judgment and order be reversed, and the cause remanded for a new trial.

VANCLIEF, C., and HAYNE, C, concurred.

The COURT.—For the reasons given in the foregoing opinion, the motion to dismiss the appeal is denied, and the judgment and order are reversed, and the cause remanded for a new trial.

THORNTON, J., concurring.—I concur in the judgment on the sole ground that the parties severed their agreement by mutual consent.