E. E. FAULKNER, Appellant, v. DES MOINES DRUG COMPANY.

Contracts: *Uncertainty as to time of employment.* A written contract by which defendant employed plaintiff to manage its surgical instrument department, and agreed to pay him 25 per cent. of the net profits derived therefrom after all expenses of operating had been deducted, and, in case of credit losses, they should be borne by plaintiff and defendant in the same proportion, and that the contract should continue until mutually agreed void, was unenforceable for uncertainty as to time of employment.

SAME: *Measure of damages.* The contract was also unenforceable by reason of the fact that there was no basis or standard by which the measure of damages for breach of the contract could be ascertained.

*Appeal from Polk District Court.*—HON. C. A. BISHOP, Judge.

TUESDAY, MAY 20, 1902.

ACTION at law for damages upon a contract for employment of the plaintiff by defendant. Judgment for defendant upon demurrer to petition, and plaintiff appeals.—*Affirmed.*

*Geo. W. Shaffer* and *Thos. F. Stevenson* for appellant.

*Cummins, Hewitt & Wright* for appellee.

WEAVER, J.—Plaintiff's petition alleges his employment by defendant under a written contract made in the following words:  "This article of agreement, made and entered into this first day of January, 1900, A. D., by and between the Des Moines Drug Company, party of the first part, and Dr. E. E. Faulkner, party of the second part, witnesseth: That the said Des Moines

Drug Company does hereby employ the said Dr. E. E. Faulkner to take charge of their surgical supply department, which is to be located in room No. 218, Second street, Des Moines, Iowa, upon the following terms and conditions, to wit: 'It is agreed that Dr. E. E. Faulkner is to receive for his compensation 25 per cent. of the net profits derived from the sales in this department after all the expenses of operating the department have been deducted. In case of any credit loss, said loss is to be borne in same proportion, namely, Des Moines Drug Company 75 per cent., and Dr. E. E. Faulkner 25 per cent. The profits of this department are to be figured at the end of each month, and said Dr. E. E. Faulkner is to receive at the close of each month his proportion of the net profits, not to exceed in one month $200.00. This contract in effect until mutually agreed void. Signed this day and date. Des Moines Drug Company, M. S. Sherman, Secretary. E. E. Faulkner.' " In pursuance of this agreement plaintiff alleges that he entered the service of defendant, January 1, 1900, and continued therein until April 5th of the same year, when defendant, without cause, wrongfully discharged him. He further says that since his discharge he has made diligent and proper effort to obtain other employment, but has failed so to do without fault on his part, and alleges that by defendant's violation of the contract he has been damaged in the sum of $2,000, for which he asks judgment.

The demurrer to this pleading is based on the following grounds: (1) That the contract provides for perpetual employment, and is void as against public policy; (2) that it is too indefinite and uncertain as to the period of employment to support a cause of action; (3) because the damages are based on a loss of profits of goods to be sold in the future; and (4) because the contract is void for uncertainty.

Of these grounds, the arguments of counsel are largely directed to the second and fourth, both involving the question whether the writing sued upon is sufficiently definite to constitute an enforceable contract. It is a familiar proposition that a contract, to have any binding force or effect in law, must be sufficiently definite and certain in its terms to furnish a criterion whereby the damages recoverable for a breach thereof can be ascertained. *Howard v. Railroad Co.*, 91 Ala. 268 (8 South. Rep. 868). In the case cited it is said: "The law does not favor, but leans against, the destruction of contracts because of uncertainty; but, when contracts are so vague and indefinite in terms that the intention of the parties cannot be fairly and reasonably collected from them, the courts will not undertake to give them effect." In a later case [*Pulliam v. Shimpf*, 109 Ala. 179 (19 South. Rep. 428)] the same court reaffirms this proposition, applying it to a contract by which defendant was to furnish a building and permit plaintiff to carry on a business therein on a basis of division of profits, the same to be continued as long as the same should pay expenses. It is there held, in substance, that this provision fixed no definite period of service, and was therefore dissolvable at the will of either party. In *Lord v. Goldberg*, 81 Cal. 596 (22 Pac. Rep. 1126, 15 Am. St. Rep. 82), a contract for "permament" employment is construed to mean nothing more than that the employment is to continue indefinitely, and until one or the other of the parties desires for some good reason to sever the relation. A like construction is put upon similar contracts in *Elderton v. Emmens*, 4 C. B. 479, and *Perry v. Wheeler*, 12 Bush, 541. It is not conceivable that in entering into the contract in suit plaintiff supposed he was entering a service from which nothing but death or the consent of the defendant could relieve him. It is equally incredible that defendant supposed or understood that it was thereby taking into its employment a person whom it

was bound to retain in its service until such time as that person should consent to his own discharge. If we should hold the contract enforceable according to its literal terms, the defendant could never abandon or sell or dispose of its business without plaintiff's consent, even though its prosecution entailed certain loss or bankruptcy; and, on the other hand, if the surgical supply department of the business should return no profit, and thus leave plaintiff without any compensation whatever for his labor, defendant could nevertheless insist that he go on with the contract to the end of his life. But assuming that such is the character of the agreement, and that either party abandons it without the other's consent, on what basis and by what standard are we to measure the damages thereby occasioned to the party not in default?

Plaintiff's compensation was to be ascertained each month by reference to the net profits of the branch of the business in his charge, after deducting all expenses of operation and adjusting so-called "credit losses." By what plan or device shall we be able to say what the future profits may be? Who can say that a continuance of the contract relation would not mean a loss, and therefore that no damage has been sustained by its breach? Or, if it be said that the profits earned before the breach of the contract furnish a basis for estimating future returns, then for what length of time shall they be computed? Shall it be for one month, one year, ten years, or for the entire period of the plaintiff's expectancy of life? Who can place any reasonable estimate upon the period which would probably elapse before the parties "mutually agree" that the contract between them shall be considered "void"? To say nothing of other quite manifest objections to the validity of a contract of this kind, it seems clear that it is entirely too indefinite to afford any reasonably certain basis for the assessment of damages, and is therefore void. *Davie v. Mining Co.*, 93 Mich. 491 (53 N. W. Rep. 625);

*Fowler v. Hoffman*, 31 Mich. 215; *Culver v. Culver*, 39 N. J. Law, 574.

The cases cited by appellant in which railroad companies have been held liable upon contracts for permanent employment in consideration of the settlement of claims for personal injury rest upon an entirely different principle. In such a case the railroad company receives the consideration for its agreement in advance, in its release from liability for damages, and, while retaining the benefit of such consideration, is properly held to a performance of its contract. The judgment of the district court was right, and is AFFIRMED.