Harry G. Hanson, appellant, v. Central Show Printing Company, Inc., appellee.

No. 51381.

(Reported in 130 N.W.2d 654)

1222

OCTOBER 20, 1964.

Brown, Dresser, Kinsey & Jolas, of Mason City, for appellant.

Pappas & Senneff, of Mason City, for appellee.

THOMPSON, J.—We state the material facts which were before the court as made by the plaintiff's evidence; and for the purpose of our consideration of the propriety of the ruling of the trial court in granting the defendant's motion for a peremptory verdict and entering judgment thereon, we take them as true. The governing rule at this point is well established.

The case as made by the plaintiff's evidence is that he was a skilled pressman, and had been in the employ of the defendant-corporation at Mason City for many years prior to 1959. In the autumn of that year he had an opportunity to obtain a steady job with the Stoyles Printing Company, also of Mason City. He knew that the defendant's business was often slack in the winter, and contacted G. C. Venz, the president of defendant, to learn whether he would have steady work with it. This resulted, after some negotiations, in an arrangement expressed in a letter from Venz to the plaintiff, which is set out:

"Oct. 21, 1959

Mr. Harry Hanson,

Starting today Oct. 21, I will guarantee you 40 hours work per week thru out the entire year each year untill you retire of your own choosing.

/s/ G. C. Venz, Pres."

The plaintiff thereupon elected to remain in the employ of the defendant, and did so until October 21, 1961, when he was discharged, without cause. His hourly rate of pay was $2.77½. He asks "damages in the past and in the future at the rate of $2.77½ per hour for 40 hours per week throughout the entire year for each year and until he retires, all according to the terms of the employment contract", and for costs. At the close of his evidence the trial court granted the defendant's motion for a directed verdict, and from the judgment entered thereon the plaintiff appeals.

I. The question before us is essentially a simple one, and has been before the courts of the various jurisdictions many times. The rule which has been generally followed is thus set forth in 35 A. L. R. 1432: "* * * in the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered, a contract for permanent employment, for life employment, for as long as the employee chooses, or for other terms purporting permanent employment, is no more than an indefinite general hiring terminable at the will of either party." This rule fits the situation before us, where the employment was to be "until you retire of your own choosing."

Many courts have applied and followed this rule. In 1961 Judge Henry Graven of the United States District Court Northern District of Iowa, discussed it at length in Bixby v. Wilson & Company, 196 F. Supp. 889. He concluded that while he was bound to follow the Iowa law on the question, it had not been exactly passed upon by the Iowa courts, but that there were strong indications the rule stated above would be followed. In that case the plaintiffs had been employed by the defendant during a strike at its Cedar Rapids plant. They were informed that

1224

their employment would be permanent. In reliance upon this promise some gave up other jobs; some gave up farm leases; and some moved to Cedar Rapids. But the trial court held that these things were insufficient consideration to support the claimed contract for permanent employment, and rendered judgment for the defendant.

The defendant urges here lack of mutuality; that is, it contends the plaintiff was not bound to any specific or enforceable term of employment. This is true; but lack of mutuality is not always proof of want of consideration. We have said: "If the lack of mutuality amounts to a lack of consideration, then the contract is invalid. But mere lack of mutuality, in and of itself, does not render a contract invalid. * * * Though consideration is essential to the validity of a contract, it is not essential that such consideration consist of a mutual promise." Standard Oil Co. v. Veland, 207 Iowa 1340, 1343, 224 N.W. 467, 469. We quoted this with approval in Des Moines Blue Ribbon Distributors, Inc., v. Drewrys Ltd., U.S.A., 256 Iowa 899, 906, 129 N.W.2d 731, 736.

So the lack of mutuality in itself is not fatal to plaintiff's case, if there is other consideration. He contends that he gave up the opportunity to take other employment; that this was a detriment to him, and so furnished consideration for the agreement. But it has been repeatedly held that this is not sufficient in contracts for permanent employment, or, as the plaintiff contends here, until he should "retire of your own choosing." In Edwards v. Kentucky Utilities Co., 286 Ky. 341, 347, 150 S.W.2d 916, 919, 135 A. L. R. 642, 646, where the plaintiff had left another job at defendant's request on the assurance of a permanent job, the Kentucky Court of Appeals said: "But be this as it may, no consideration was paid to the appellee for the contract of employment sued on; and we are not disposed to broaden the present rule in this state by which such contracts are construed as contracts terminable at the will of either party * * *." So, in Chesapeake & Potomac Tel. Co. v. Murray, 198 Md. 526, 533, 84 A.2d 870, 873, 28 A. L. R.2d 920, 926, it was held: "However, the mere giving up of a job, business or profession by one who decides to accept a contract for alleged life employment is but

an incident necessary on his part to place himself in a position to accept and perform the contract, and is not consideration for a contract of life employment."

The same question was before the Michigan Supreme Court in Adolph v. Cookware Co. of America, 283 Mich. 561, 568, 278 N.W. 687, 689, where it was said:

"Plaintiff's proofs, taken as true, showed a contract for permanent employment. Such a contract is for an indefinite period, and, unless for a consideration other than promise of services, the employment was terminable at the will of either party. Lynas v. Maxwell Farms, 279 Mich. 684 [273 N.W. 315], and cases there cited.

"The action of plaintiff in giving up the practice of his profession was but an incident necessary on his part to place himself in a position to accept and perform the contract and not a price or consideration paid to defendant for the contract of employment." Also cited is Lord v. Goldberg, 81 Cal. 596, 22 P. 1126, 15 Am. St. Rep. 82.

The question was extensively considered in Skagerberg v. Blandin Paper Co., 197 Minn. 291, 266 N.W. 872. The plaintiff's case showed that he was a consulting engineer, specializing in the field of heating, ventilating and air conditioning. While he was employed by the defendant, he received an offer from Purdue University for employment at a yearly salary, which would leave him free for three months to continue his practice; and while performing his duties at the university he would be permitted to carry on his private work so far as time permitted. He communicated this offer to the defendant, which promised, if he would refuse the Purdue offer and would purchase the home of defendant's power superintendent, it would give him permanent employment. A demurrer was sustained in the trial court and the judgment affirmed by the Minnesota Supreme Court. That court said: "The words 'permanent employment' have a well-established meaning in the law. The general rule is well stated in 18 R. C. L. p. 509, Sec. 20: 'In case the parties to a contract of service expressly agree that the employment shall be "permanent" the law implies, not that the engagement shall be continuous or for any definite period, but that the term being indefinite

the hiring is merely at will.' " Loc. cit. 197 Minn. 294, 266 N.W. 873, 874.

With reference to plaintiff's contention that consideration passed from him to the defendant, the court said: " 'The effort of plaintiff to show an additional consideration passing from him to defendant was abortive since it shows that he merely abandoned other activities and interests to enter into the service of defendant—a thing almost every desirable servant does upon entering a new service, but which, of course, cannot be regarded as constituting any additional consideration to the master'." Loc. cit. 302 of 197 Minn. To the same effect is Arentz v. Morse Dry Dock & Repair Co., 249 N. Y. 439, 164 N.E. 342, 344, 62 A. L. R. 231.

Our own cases, while not entirely clear on the point, seem to uphold the authorities from other jurisdictions. Thus in Lewis v. Minnesota Mutual Life Insurance Co., 240 Iowa 1249, 37 N.W.2d 316, we stated and followed the general rule that in the absence of a consideration in addition to the services to be rendered, contracts for permanent employment are indefinite hirings, terminable at the will of either party. Loc. cit. 240 Iowa 1259, 1260, 37 N.W.2d 322; and we also said that "The giving up of the opportunity to take other employment cannot be held to be an additional consideration." Skagerberg v. Blandin Paper Co., supra, is cited. Loc. cit. 240 Iowa 1260, 37 N.W.2d 322, 323. Although other matters were considered in the Lewis case, the holding and language referred to last above are pertinent.

II. In Faulkner v. Des Moines Drug Co., 117 Iowa 120, 90 N.W. 585, in which the plaintiff claimed a contract for employment "until mutually agreed void", we cited with approval Lord v. Goldberg, supra, for the rule that "a contract for 'permanent' employment is construed to mean nothing more than that the employment is to continue indefinitely, and until one or the other of the parties desires for some good reason to sever the relation." Loc. cit. 117 Iowa 122, 90 N.W. 586. In the Faulkner case a demurrer to the petition was sustained by the trial court, and its judgment affirmed by us. Much of the discussion pertained to the indefiniteness of the contract, as to amount of prospective earnings, and the length of time the damages should be computed.

We said: "Or, if it be said that the profits earned before the breach of the contract furnish a basis for estimating future returns, then for what length of time shall they be computed? Shall it be for one month, one year, ten years, or for the entire period of the plaintiff's expectancy of life? Who can place any reasonable estimate upon the period which would probably elapse before the parties 'mutually agree' that the contract between them shall be considered 'void?'" Loc. cit. 117 Iowa 123, 90 N.W. 587. If we substitute for "mutually agree" the words "until you retire of your own choosing", an equally uncertain happening, we have the identical case which we held insufficient in Faulkner v. Des Moines Drug Co., supra. The difficulty of delineating any definite claim for damages is pointed up by the prayer of the plaintiff's petition, which we have referred to above. How would the trier of the facts have any guide as to how many years it might be "until he chose to retire"; or how much his loss might be mitigated by other employment which he might secure? It might be contended that the "reasonable time" rule should be adopted as we did in the case of the agency contract involved in Des Moines Blue Ribbon Distributors v. Drewrys Limited, supra. But in the first place, the plaintiff neither pleads nor contends for such a measure of damages; and in the second, there was adequate consideration for the agreement in the Blue Ribbon case, while the general rule which we have discussed and followed in Division I demonstrates that such consideration is lacking here.

III. There is a class of cases in which sufficient consideration to uphold a contract for permanent, or life, employment, or employment so long as the employee chooses, has been found. These are cases in which the servant has been found to have paid something for the promise of the employment, in addition to his agreement to render services. A majority of them are cases in which the employer, faced with a claim for damages, agreed to give the claimant permanent employment in consideration of the release of his claim. Many of these cases are collated in Chesapeake & Potomac Tel. Co. v. Murray, supra, pages 873 and 874 of 84 A.2d. A case involving a different but also valid consideration is Carnig v. Carr, 167 Mass. 544, 46 N.E. 117, 35 L. R. A.

512, 57 Am. St. Rep. 488. The factual situation there was that the plaintiff had been engaged in a competing business with the defendant, and had accepted permanent employment which involved the abandonment of his own enterprise. The defendant thereby received the benefit of removal of competition. So in the Iowa case of Thompson v. Miller, 251 Iowa 324, 100 N.W.2d 410; the contract involved more than a mere hiring. The inapplicability of the case to the present situation is shown by this quotation: "In this case more is involved than mere services. Plaintiff paid half of the advertising and sales costs and all of his traveling expenses." Loc. cit. 251 Iowa 327, 100 N.W.2d 412. We also said: "On the other hand, the hitch pin enterprise was new. It was plaintiff's idea and uncertain as to its future. The parties may have considered it in the nature of a joint adventure into which plaintiff was putting cash as well as his services." Loc. cit. 251 Iowa 328, 100 N.W.2d 412.

IV. Two cases cited and relied upon by the plaintiff contain language in apparent opposition to the general rule set forth in Divisions I and II above. These are Littell v. Evening Star Newspaper Co., 73 App. D. C. 409, 120 F.2d 36, and Eggers v. Armour & Co. of Delaware, C. C. A., 8th Cir., 129 F.2d 729. They are not in line with the great majority of authority, or with our own expressions in Lewis v. Minnesota Mutual Life Insurance Company and Faulkner v. Des Moines Drug Company, both supra. We think the real basis for the majority rule is that there is in fact no binding contract for life employment, when the employee has not agreed to it; that is, when he is free to abandon it at anytime. So in the instant case, the plaintiff was bound only so long as he chose to work. It does not help to say that a contract for life employment, or permanent employment, may be binding if it is fully agreed upon, even though the only consideration furnished by the employee is his agreement to serve. The fact is he has not agreed to serve for life, or permanently; but only so long as he does not elect to "retire of his own choosing." What the rule might be if he had bound himself to work for life, or so long as he was able, we have no occasion to determine. These observations go to the lack of mutuality and would not be important if there was other

consideration. Many difficulties would arise even if such a contract had been made and upheld, in the way of determining the damages because of uncertainty of type of employment, or rate of pay, or how much his loss might be mitigated, in the event of wrongful discharge, by other employment which he might find. But we have no occasion to go further into those questions here. The case is ruled by the authorities cited in Divisions I and II and by the legal principles there set forth. The trial court correctly granted the defendant's motion for a peremptory verdict.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting, and GARFIELD, C. J., who dissents.