Ross E. **BRUMBAUGH**, Plaintiff,

v.

**RALSTON PURINA COMPANY**, Defendant.

Civ. No. 86–31–D–1.

United States District Court,
S.D. Iowa,
Davenport Division.

March 23, 1987.

Alan G. Blackwood, Schrager, Blackwood & Nowinski, Moline, Ill., for plaintiff.

Betty Jane Okenfuss, St. Louis, Mo., Labor counsel for Ralston Purina Co.

Robert V.P. Waterman, Jr., Lane & Waterman, Davenport, Iowa, for defendant.

---

RULING AND ORDER

STUART, District Judge.

On January 29, 1987, defendant's Motion for Summary Judgment came on for hearing. Appearances are noted in the Clerk of Court's minutes for that date.

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the exist-

ence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1984).

Plaintiff seeks to recover damages from the defendant Ralston Purina Company (hereinafter "Purina"), his former employer, for his wrongful discharge. Purina claims that Ross E. Brumbaugh was an employee-at-will and was subject to discharge without cause. The primary issues are (1) whether the disciplinary-discharge provisions of the employees manual were applicable to plaintiff, a supervisory employee, and (2) if they are, whether these provisions in the employee's manual, under the facts of this case, expressly or impliedly, became a part of plaintiff's employment contract.

The facts in the record viewed, in the light most favorable to plaintiff, are as follows:

Plaintiff began working as an hourly employee at Purina's Davenport facility in 1975. At the time he was hired, he was given a copy of Purina's Employee Relations Manual that contained the following pertinent provisions:

To All Purina Employees:

You will find in this booklet the basic operating principles and policies of the Ralston Purina Company, at the Davenport plant.

It will be in your best interest to become thoroughly familiar with all parts of it. You will see the advantages of personal initiative and development of job skills to help insure your future progress. You will learn the benefits of continued loyal services as it affects wages and seniority.

You will recognize principles of sound management to encourage economy and efficiency of operations, maintenance of high standards, of product quality and elimination of waste.

If you have any questions, don't hesitate to consult your Supervisor or the Personnel Manager.

\* \* \* \* \* \*

J. PLANT RULES

25.0 Every well regulated company must have rules to protect the best interests of both the company and its employees. In order to make such rules effective and to benefit the majority of the employees, procedures must be established to deal with infractions. These rules will be posted on the plant bulletin board and are included on the following pages.

RULES OF CONDUCT

25.1 The following rules of conduct will be observed to insure the efficient, orderly and safe operation of the plant. In keeping with the concept of progressive industrial discipline, employees who fail to abide by these basic rules will be subject to corrective discipline. The corrective discipline assessed for a rule violation will depend upon the nature of the offense. The discipline may range from a simple warning for minor offenses or omissions to—and including—disciplinary layoffs without pay for more serious or repeated infractions. Immediate discharge without previous warning will result from major infractions. Discharge may also result from repeated infractions or uncorrected conduct.

Listed below, without any attempt to show order of severity or seriousness, are representative infractions which may justify disciplinary action, including discharge:

1. Stealing Company or private property.

2. Falsifications of any Company records. . . .

Although Purina has from time to time unilaterally revised its provisions, there is no evidence that these specific provisions have ever been changed.

In March 1980, Brumbaugh was promoted to a salaried supervisory position. No promises were made to him at that time about his job. He could have resigned whenever he wanted to. He received several favorable commendations for his work.

In the fall of 1985, Purina conducted a sales promotion that required the production lines to insert coupons valued at $1.50 a piece in certain "flagged" containers for distribution to the consumers. A procedure was established to provide a control mechanism that included a coupon control log. Brumbaugh did not follow this procedure, but accumulated some 1800 coupons that should have been turned over to the next shift. He also instructed another employee to give him the extra coupons so he could "burn them". His actions were discovered and on December 6, 1985, without utilizing the disciplinary-discharge provisions in the employees manual, he was terminated for falsification of company records, the coupon control log. As we are not at this stage of the proceedings concerned with "just cause", further detailing of the evidence is not necessary.

In response to Purina's claim that Brumbaugh was an employee-at-will who could be terminated any time with or without cause, plaintiff asserts: .

It is plaintiff's position that he was not an employee-at-will; rather, he had a contract of employment which restricted defendant's right to terminate him. This contract is founded upon the employer's express statements that employees like plaintiff are terminated only for just cause and that the concept of progressive discipline is applicable, ....

Alternatively, plaintiff contends that the Employee Manual, particularly the just cause and progressive discipline provisions, is a part of his employment contract, either impliedly or expressly.

Plaintiff's Memorandum of Law.

### Applicability of Employees Manual to plaintiff

█ The Court does not consider the deposition testimony of Purina's management employees relating to the applicability of the disciplinary-discharge provisions of the manual to supervisory personnel sufficient evidence to furnish an independent basis upon which a contractual right could be established. However, the statements are evidence of the management's interpretation of these provisions of the manual. These statements create a genuine issue of material fact as to the applicability of the disciplinary-discharge provisions to Brumbaugh and the motion for summary judgment on this ground is denied.

Therefore, the determinative question on defendant's motion for summary judgment is whether under the facts and circumstances of this case, the disciplinary-discharge provisions of the Employee Relations Manual, expressly or impliedly are a part of Brumbaugh's employment contract establishing a contractual restriction on the right of defendant to discharge him without cause as an employee-at-will.

### Employee-at-will

Brumbaugh concedes he could resign at any time and is an employee-at-will but for the manual's limitations on discharge. As this is a diversity action, Iowa law applies. Although there has been considerable litigation in this area in recent years, see Anno Discharge of At-Will-Employee, 12 A.L.R. 4th 544 (1982), the Supreme Court of Iowa has not yet addressed the issue of when, if ever, the terms of a company employee's manual of policies, procedures and practices can create contractual obligations on the part of the employer. It therefore becomes this Court's duty to attempt to predict the position the Iowa Supreme Court will take when this issue is before it.

The courts that have considered this issue may be placed generally in one of three categories. The first line of cases treats a company manual of policies, practices and procedures as a gratuitous, unilateral expression of the employer's position, which is not bargained for, lacks consideration and does not become a part of the employ-

ment contract.[1] A second line of cases holds that if an employee continues in employment after a new or modified manual has been circulated, his continued employment supplies consideration and that the benefits to the employee have been "bargained for" and become a part of the employment contract.[2] A third line of cases holds that an employer's statements of policy, practice and procedures can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee, and, hence, although the statement of policy is signed by neither party, can be unilaterally amended by the employer without notice to the employee, and contains no reference to a specific employee, his job description or compensation, and although no reference was made to the policy statement in preemployment interviews and the employee does not learn of its existence until after his hiring.[3]

█ It appears to the Court that the first line of cases adheres to the traditional contract concept. The second line, although some cases take a contract approach, appears to substitute promissory estoppel for contract. The third line, in effect, does away with the employee-at-will rule if a manual is circulated. They do not require that the elements of contract or promissory estoppel be satisfied. The Court believes that the Iowa Supreme Court would not depart from the common

law employee-at-will rule and therefore, it would not follow the third line of cases. The second line of cases are not applicable because there is no evidence that the provisions in issue here were changed after plaintiff became an employee. The Court need not decide whether the Iowa court would follow this line of cases. The Court predicts that, under the facts, the Iowa Supreme Court would follow the first line of cases referred to for the reasons hereinafter set forth.

█ The Iowa Supreme Court follows the common law rule that an employee who merely promises to perform service is not a permanent employee, and may be discharged with or without cause by the employer. *Albert v. Davenport Osteopathic Hospital,* 385 N.W.2d 237, 238 (Iowa 1986); *Abrisz v. Pulley Freight Lines,* 270 N.W.2d 454, 455 (Iowa 1978). The Iowa Supreme Court provided an important exception to the general rule:

> [A] different situation arises where there is consideration in addition to the promise to perform services. Where the employee furnishes consideration in addition to his services, a contract for permanent or lifetime employment is valid and enforceable and continues to operate as long as the employer remains in business and has work for the employee [so long as] the employee performs competently.

*Albert,* 385 N.W.2d at 238.

The Iowa Supreme Court has held that:

1. *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505, (1980) (except violation of public policy); *Beidler v. W.R. Grace Inc.,* 461 F.Supp. 1013, 1016 (E.D.Pa.1978); *Ferraro v. Koelsch,* 350 N.W.2d 735 (Wis.App.1984) (rejected by Wisconsin Supreme Court 368 N.W.2d 666); *Sargent v. Illinois Institute of Technology,* 78 Ill.App.3d 117, 33 Ill.Dec. 937, 397 N.E.2d 443 (1st Dist.1979); *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779, (1976) and *Mau v. Omaha National Bank,* 207 Neb. 308, 299 N.W.2d 147 (1980).

2. *Enis v. Continental Illinois National Bank and Trust,* 795 F.2d 39, 42 (7th Cir.1986); *Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251, 1263–1264 (7th Cir.1985); *Pudil v. Smart Buy, Inc.,* 607 F.Supp. 440, 443–444 (N.D.Ill.1985); *Ring v. R.J. Reynolds Industries, Inc.,* 597 F.Supp. 1277, 1280 (N.D.Ill.1984); *Enis v. Continental Illinois National Bank & Trust,* 582

F.Supp. 876, 878–879 (N.D.Ill.1984); and *Rynar v. Ciba-Geigy Corp.,* 560 F.Supp. 619, 624–625 (N.D.Ill.1983); *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983).

3. *Mursch v. Van Dorn Co.,* 627 F.Supp. 1310, 1316 (W.D.Wis.1986); *Pelizza v. Reader's Digest Sales and Services,* 624 F.Supp. 806, 810 (N.D.Ill. 1985); *Fletcher v. Wesley Medical Center,* 585 F.Supp. 1260, 1264 (Kans.1984); *Duldulao v. St. Mary of Nazareth Hospital,* 136 Ill.App.3d 763, 91 Ill.Dec. 470, 472, 483 N.E.2d 956, 958 (1st Dist.1985); *Ferraro v. Koelsch,* 124 Wis.2d 154, 368 N.W.2d 666, 668 (1985) (affirming the appellate court decision in 350 N.W.2d 735 for a different reason); *Kaiser v. Dixon,* 127 Ill. App.3d 251, 82 Ill.Dec. 275, 284, 468 N.E.2d 822, 831 (2nd Dist.1984); and *Toussaint v. Blue Cross & Blue Shield of Mich.,* 408 Mich. 579, 292 N.W.2d 880 (1980). *See Pine River State Bank v. Mettille,* 333 N.W.2d at 629–630.

The important question of what constitutes that additional consideration has been determined on a case-to-case basis. *See Laird* [*v. Eagle Iron Works*], 249 N.W.2d [646] at 647–48 [(Iowa 1977)] (relinquishment of another position held at will constituted insufficient consideration for permanent employment); *Hanson v. Central Show Printing Co*, 256 Iowa 1221, 1224, 130 N.W.2d 654, 656 (1964) (giving up opportunity for another job insufficient consideration); *Bixby v. Wilson & Co.*, 196 F.Supp. 889, 901 (N.D. Iowa 1961) (moving expenses paid by employee insufficient consideration); *see generally* Naylor, *Employment At Will: The Decay of an Anachronistic Shield for Employers?* 33 Drake L.Rev. 113, 118 (1983) (citing cases from other jurisdictions which have granted exceptions to at will rule where additional consideration for permanent employment has been established); Annot., 60 A.L.R.3d 226 (1974) (same); 53 Am.Jur.2d *Master and Servant* § 33 (1970).

*Id.* at 238.

The Court is convinced that the Iowa Court under these facts would hold that there was inadequate consideration here to bring this case within the exception to the common law employee-at-will rule although disciplinary-discharge procedures, not permanent employment, is involved. It would hold that performance of services required by the job does not constitute consideration.

As the Illinois courts have been particularly active in this area,[4] it might seem that an analysis of that state's case law would be helpful. However, the Court has not found any decision by the Illinois Supreme Court on this issue. The Illinois appellate courts have reached different results. Although many of the Illinois cases discuss that state's decisions, the most authoritative discussion is found in the opinion of the Seventh Circuit Court of Appeals in *Enis v. Continental Illinois National Bank*, 795 F.2d 39, 41 (7th Cir.1986). Judge Posner writes:

We doubt that the Illinois Supreme Court is prepared to go as far as the First District in *Duldulao*. The main effect of its doing so would be to discourage employers from issuing employee manuals, since by issuing them they would be giving contractual protection to all new employees (as well as to many old ones—the implication of *Carter* [*v. Kaskaskia Community Action Agency*, 24 Ill.App.3d 1056, 322 N.E.2d 574 (1974)] and *Kaiser*). Even in tenured professions like teaching, there ordinarily is a probationary period before the new employee receives contractual protection, but there would be none under the view casually taken in *Duldulao*. It is no answer that employers can festoon their manuals with disclaimers of liability for violations of the terms and conditions set forth in the manual; courts frequently disregard disclaimers of liability, and anyway the disclaimers would not help the myriad of employers that had issued such manuals without foreseeing the possibility that by doing so they might be deemed to have granted a form of tenure to their employees.

So, forced to guess, we would guess that the Illinois Supreme Court would follow the line taken in [*Johnson v.*] *Figgie* [132 Ill.3d 922, 87 Ill.Dec. 669, 477 N.E.2d 795 (1985)] and by the district court in the present case: the employee manual creates contract rights only if it is either a part of a pre-existing employment contract (that is, if the relationship was not in fact one of employment at will) or an enforceable modification of the employment-at-will relationship.

The Court believes that the Iowa Court would adopt the reasoning expressed by Judge Posner.

■ In conclusion, this Court predicts that the Iowa Supreme Court will continue to adhere to the common law rule relating to employment-at-will, except when the termination is for a reason that violates state public policy. In so far as an employee's manual is concerned, the Court predicts that the Iowa Supreme Court will require

---

**4.** See the Illinois cases cited under footnotes 1, 2 and 3.

consideration in addition to the employee's continued performance of his services in order to convert an employment-at-will situation into a binding contractual arrangement. In some instances a factual issue may be raised for jury determination as to the intent of the parties. *Barger v. General Electric Co.,* 599 F.Supp. 1154, 1164 (W.D.Va.1984); *Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 688 P.2d 170 (1984). However, in this case plaintiff relies on an employees manual that was in effect when he was hired and relies upon his continued employment as consideration for a contractual right to require the employer to follow disciplinary-discharge proceedings contained in the manual. This is not sufficient consideration under the Iowa cases.

The Court considered holding, as a matter of law, that defendant did not violate the disciplinary-discharge provisions in the manual. The manual provided for immediate discharge without previous warning for "major infractions". The admitted conduct appears to be a major infraction. See *Enis v. Continental Illinois Nat. Bank,* 795 F.2d at 42. However, the fact that plaintiff received standard termination payments from the defendant, may be sufficient to raise a factual issue as to "major infraction."

For the reasons stated above, the Court concludes that defendant's motion for summary judgment must be granted.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted and the Clerk of Court is authorized and directed to enter judgment in favor of defendant and against the plaintiff for the costs of this action.