Ivan STEDILLIE, Appellant,

v.

AMERICAN COLLOID COMPANY, a
Delaware Corporation, Appellee.

Monte TALKINGTON, Appellant,

v.

AMERICAN COLLOID COMPANY, a
Delaware Corporation, Appellee.

Nos. 91–2654, 91–2658.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 27, 1992.

Decided June 25, 1992.

Robert L. Morris, II, Belle Fourche, S.D., argued (Terrence R. Quinn, on the brief), for appellants.

Thomas E. Simmons, Rapid City, S.D., argued (Mark F. Marshall, Rapid City, S.D.,

and Robert E. Arroyo, Chicago, Ill., on the brief), for appellee.

Before McMILLIAN, FAGG and WOLLMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Monte Talkington and Ivan Stedillie appeal from final orders entered in the United States District Court[1] for the District of South Dakota granting summary judgment in favor of their former employer, American Colloid Co. *Talkington v. American Colloid Co.*, 767 F.Supp. 1495 (D.S.D.1991) (*Talkington*); *Stedillie v. American Colloid Co.*, 767 F.Supp. 1502 (D.S.D.1991) (*Stedillie*). The cases were consolidated for appeal. For reversal, appellants argue that the district court erred in holding that (1) the employee handbook did not create a just cause termination employment contract, (2) the secrecy agreements did not constitute "additional consideration" to create a just cause termination employment contract, and (3) promises made to appellants did not constitute promissory estoppel. For the reasons discussed below, we affirm the orders of the district court.

## BACKGROUND FACTS

Talkington began working for American Colloid in the spring of 1972[2] and Stedillie began working for American Colloid in October, 1973. Each was hired for a probationary period of 90 days, after which each became a "permanent employee." This probationary period and their status as permanent employees was outlined in the employee handbook which both Stedillie and Talkington received. This handbook also included a section entitled "Termination of Employment" which stated:

Employees wishing to terminate their services should give a minimum of two weeks' notice to their supervisor in order to leave in good standing.

If you are dismissed, a full explanation for the reasons, given to you by your supervisor, will be provided.

The Personnel Department conducts exit interviews with all terminating employees.

Stedillie received various job promotions and, in 1981, when he was promoted to safety coordinator/quality assurance, American Colloid required him to sign a secrecy agreement. Talkington also received promotions and, in 1975, when he was promoted to a lab supervisor position, he was required to sign a similar secrecy agreement. These agreements provided that all inventions were property of the company and that

for a period of three (3) years after the termination of his employment he will not engage in the development, manufacture or sale of bentonite or other products then being developed, manufactured or sold by Company, either directly or indirectly, as principal, agent, employee or consultant for any firm or corporation in any counties or states in which Company may now or hereafter during his employment engage in business....

Appellants were discharged on March 4, 1985. Neither was told the reasons for his discharge and neither received an exit interview.

On February 26, 1991, appellants filed complaints against American Colloid in federal district court alleging breach of contract, breach of an implied covenant of good faith and fair dealing, promissory estoppel, negligence, and wrongful termination. American Colloid filed motions to dismiss or, alternatively, for judgment on the pleadings in each case. The district court entered orders in each case convert-

---

1. The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota.

2. Talkington, in his brief to this court, stated that he began working for American Colloid in the spring of 1972. In the district court opin-

ion, the district court stated that Talkington began working for American Colloid in 1973. *Talkington v. American Colloid Co.*, 767 F.Supp. 1495, 1497 (D.S.D.1991). When Talkington began work for American Colloid does not affect this court's analysis.

ing these motions into motions for summary judgment. Following briefing and a hearing, the district court granted American Colloid's motions for summary judgment in each case. These consolidated appeals followed.

DISCUSSION

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

*Employee Handbook Creating a Just Cause Termination Contract*

■ Both parties agree that the employee handbook was an employment contract. South Dakota law provides that employment having no specific term may be terminated at the will of either party. S.D.Codified Laws Ann. § 60–4–4 (1978); *Petersen v. Sioux Valley Hosp. Ass'n,* 486 N.W.2d 516, 520 (S.D.1992); *Butterfield v. Citibank of S.D.,* 437 N.W.2d 857, 859 (S.D. 1989) *(Butterfield ).* The South Dakota Supreme Court has recognized "a narrow, contract-based exception to the employment at will doctrine ... where an employer specifically agrees in an employee handbook to discharge employees, 'for cause only.' " *Butterfield,* 437 N.W.2d at 859, *citing Osterkamp v. Alkota Mfg., Inc.,* 332 N.W.2d 275 (S.D.1983) *(Osterkamp ). Osterkamp* was the first South Dakota case to recognize this narrow exception. *Osterkamp* provided two possible ways that the language in an employee handbook could create a just cause termination contract:

First, such an agreement may be found where the handbook explicitly provides, in the same or comparable language, that discharge can occur "for cause only." Second, a "for cause only" agreement may be implied where the handbook contains a detailed list of exclusive grounds for employee discipline or discharge and, a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination.

*Butterfield,* 437 N.W.2d at 859 (citations omitted); *see Cutter v. Lincoln Nat'l Life Ins. Co.,* 794 F.2d 352, 355–56 (8th Cir.1986) *(Cutter )* (applying South Dakota law, the language of employee handbook insufficient to create a "for cause only" termination agreement).

In *Osterkamp,* the South Dakota Supreme Court found the employee handbook sufficient to create a just cause termination contract. 332 N.W.2d at 277. The employee handbook contained a list of twenty-eight rules which would result in discipline, *id.* at 276, and a section which detailed the "corrective discipline" approach of the company and explained the "four notice" procedure which would be used for discipline and discharge, *id.* at 277.

■ Appellants argue that the employee handbook meets the second part of the *Osterkamp* test; they contend that "for cause only" termination may be inferred from the language of the handbook. Appellants argue that three different sections, in combination, create a just cause termination contract. First, the handbook provides for a ninety day probationary period during which an employee can be terminated for "any reason." The handbook then states that "[a]t the completion of the probationary period, you will become a permanent employee." The language stating that an employee can be terminated for any reason only applies to the ninety day probation period. There is no such language concerning a permanent employee. There-

fore, appellants argue that a permanent employee can only be fired for cause.

Second, appellants highlight a portion of the employee handbook which they argue implied that an employee can only be terminated for misconduct:

Of course, it is impossible to list every possible type of misconduct which may result in a disciplinary action. If you will act as a reasonable, law-abiding citizen, and do your job well, you will get along well and enjoy your membership in the family of American Colloid's employees.

Finally, appellants argue that the language on termination quoted above creates a procedure that American Colloid must follow to terminate an employee. Together, these three provisions, according to appellants, create a just cause termination contract.

In support of their position, appellants point to cases decided under Wyoming law. In *Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo.1986), the Wyoming Supreme Court analyzed the same employee handbook in dispute in the present case. The Wyoming Supreme Court examined the contrast in language between the ninety day probationary period and an employee's status as a "permanent employee" and concluded that "the handbooks strongly imply that a permanent employee is one that can be discharged only for cause." *Id.* at 1063. The Wyoming Supreme Court then examined the list of misconduct which would result in discharge and the section on "Termination of Employment" and concluded that "both the specific terms and the general tenor of the handbooks gave [the employee] an enforceable right to be discharged only for cause." *Id.; see Durtsche v. American Colloid Co.*, 958 F.2d 1007 (10th Cir.1992) (applying Wyoming law to a slightly different American Colloid handbook).

American Colloid argues that the employee handbook, while a contract, does not alter the presumed employment-at-will status of appellants because the *Osterkamp* test was not met. American Colloid argues that the employee handbook did not explicitly provide that employees would only be terminated for cause. Nor was the second *Osterkamp* exception met, according to American Colloid, because the handbook does not contain a detailed list of the exclusive grounds for employee discipline.

We agree with American Colloid and the district court. Nothing in the employee handbook altered the presumption of employment-at-will in South Dakota. We must analyze this case using the *Osterkamp* test as reaffirmed in *Butterfield*. First, the handbook contains no specific language which explicitly provides that discharge can occur "for cause only." Additionally, American Colloid's employee handbook does not meet the implied language *Osterkamp* test. The only section in the handbook which lists specific conduct that will result in discharge is the section entitled "Absence From Work" which states:

If you are absent for three days, and do not report to your supervisor, it is possible that you will be considered automatically terminated.

If you are chronically absent, or late in arriving to work, you will seriously jeopardize your employment.

This is not a "detailed list of exclusive grounds for employee discipline," *Butterfield*, 437 N.W.2d at 859, as envisioned in *Osterkamp*, where the employee handbook listed twenty-eight reasons for discipline. The American Colloid employee handbook also does not meet the second part of the implied language test because there is no "mandatory and specific procedure which the employer agrees to follow prior to any employee's termination." *Butterfield*, 437 N.W.2d at 859. The termination language quoted above simply states that reasons will be given to a terminated employee and that an exit interview will be held. These procedures do not constitute a specific pro-

cedure to be used for employee discipline as the "four notice" procedure in the employee handbook in *Osterkamp* did.

Additionally, the language quoted above that if an employee acts as a "reasonable, law abiding citizen and [does his or her] job well," the employee will do well at American Colloid is "too general to confer any specific rights on which a breach of contract claim can be based." *Bauer v. American Freight System, Inc.*, 422 N.W.2d 435, 438 (S.D.1988); *see Cutter*, 794 F.2d at 355.

We hold that, under South Dakota, American Colloid's employee handbook does not create a just cause termination contract. We find the analogy to Wyoming law unpersuasive. South Dakota is more restrictive in defining what constitutes a "for cause only" contract. While Wyoming puts a great deal of importance on the term "permanent employee," the South Dakota Supreme Court stated in *Merritt v. Edson Express, Inc.*, 437 N.W.2d 528, 530 (S.D. 1989) (*Merritt*) (citations omitted), "a promise of lifetime or permanent employment will be interpreted as indefinite and terminable at-will in the absence of some executed consideration in addition to the services being rendered." Therefore, under South Dakota law, appellants remained employees-at-will and subject to termination at any time.

### "Additional Consideration" Creating a Just Cause Termination Contract

■ Many states have adopted an "additional consideration" rule whereby additional consideration beyond the traditional services for pay agreement can create a just cause termination contract. *See, e.g., Corum v. Farm Credit Serv.*, 628 F.Supp. 707, 713 (D.Minn.1986) (*Corum*); *Wolfe v. Graether*, 389 N.W.2d 643, 653 (Iowa 1986) (*Wolfe*); *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334, 338–39 (1988) (*Scott*); *Roberts v. Atlantic Richfield Co.*, 88 Wash.2d 887, 568 P.2d 764, 769 (1977) (*Roberts*).

Appellants argue that the "additional consideration" rule was adopted by the South Dakota Supreme Court in the language from *Merritt* quoted above. Based on dicta in *Merritt*, appellants argue that the secrecy agreements which they signed constituted "some executed consideration in addition to the services being rendered," 437 N.W.2d at 530, because each gave up his right to work in the bentonite industry for three years following his termination from American Colloid.

American Colloid argues that the secrecy agreement does not constitute adequate additional consideration to make appellants' employment only terminable for cause. American Colloid argues that the covenant not to compete does not rise to the level of additional consideration which courts have found to create a just cause termination contract.

The district court found that while the South Dakota Supreme Court would adopt the "additional consideration" rule as sent forth in dicta in *Merritt*, the present case did not meet the requirements for additional consideration. *Talkington*, 767 F.Supp. at 1499–1500; *Stedillie*, 767 F.Supp. at 1506–07. We do not find it necessary to determine whether the South Dakota Supreme Court would adopt the dicta in *Merritt* because, even if the court did so, we agree with the district court that the secrecy agreement did not constitute adequate additional consideration. To see why this is true, it is helpful to compare those some cases which have found adequate consideration with those which have not.

Other courts have applied the additional consideration doctrine and have found that the following do not constitute additional consideration: (1) foregoing other job opportunities, moving when transfers were ordered, and deferred compensation, *Roberts*, 568 P.2d at 769; (2) giving up the opportunity to take other employment, *Corum*, 628 F.Supp. at 713, *Hanson v. Central Show Printing Co.*, 256 Iowa 1221, 130 N.W.2d 654, 657 (1964); (3) relinquish-

ing rights to inventions, *Parker v. United Airlines, Inc.*, 32 Wash.App. 722, 649 P.2d 181, 183, *review denied*, 98 Wash.2d 1011 (1982); (4) relinquishing rights to inventions and an agreement not to divulge employer's secrets, *Scott*, 545 A.2d at 336.

By contrast, in *Stauter v. Walnut Grove Prod.*, 188 N.W.2d 305, 312 (Iowa 1971) (*Stauter*), the Iowa Supreme Court held that by giving up a competitive business as part of an agreement to sell his business to the defendant, the plaintiff had shown adequate additional consideration to make his employment not terminable at will. The Iowa courts also found that giving up rights associated with being a partner and becoming merely an employee could constitute adequate additional consideration. *Wolfe*, 389 N.W.2d at 653.

We agree with the district court that the present case closely resembles *Scott. Scott* involved an employee who had a ninety day probationary period and had signed an agreement giving her employer all rights to any inventions or improvements she might conceive. *Scott*, 545 A.2d at 336. The court found that there was no evidence that the employee brought any abilities to job beyond those for which she was compensated and stated that "[t]he at-will presumption is not overcome every time a worker sacrifices theoretical rights and privileges." *Id.* at 339. In the present case, appellants also sacrificed a theoretical right by foregoing possible future employment. As the district court stated: "The conception of an invention, and an employee's right to market in the future the rights to that invention, is no more 'theoretical' than [appellant's] potential employment future in the bentonite industry." *Talkington*, 767 F.Supp. at 1500–01; *Stedillie*, 767 F.Supp. at 1507–08. The secrecy agreement signed by appellants does not rise of the level of additional consideration, as was found in *Wolfe* and *Stauter*. We therefore agree with the district court that appellants' employment remained employment-at-will.

*Promissory Estoppel Claim*

■ Appellants next argue that the district court erred in dismissing their promissory estoppel claims. Appellants' promissory estoppel claims are based upon the same language in the employee handbook and the secrecy agreement relied upon in their breach of contract claims. Appellants claim that these documents made a representation to each of them that his employment would not be terminated without just cause, they were nevertheless terminated without just cause, and as a result they suffered a detriment of not being able to work in the bentonite industry for three years.

American Colloid argues that the district court correctly concluded that this argument "has no greater legal merit than his breach of contract claim." *Talkington*, 767 F.Supp. at 1501; *Stedillie*, 767 F.Supp. at 1508. We agree. Appellants' promissory estoppel argument is based upon the same language as their breach of contract claim. We held that appellants' employee handbook and secrecy agreement did not create a just cause termination contract. For the same reasons, their handbook and secrecy agreement do not constitute a promise of permanent employment that could have been reasonably relied upon by appellants.

Accordingly, we affirm the orders of the district court.