Monte TALKINGTON, Plaintiff,

v.

AMERICAN COLLOID COMPANY, a
Delaware corporation, Defendant.

No. CIV. 91–5014.

United States District Court,
D. South Dakota, W.D.

June 13, 1991.

Terence R. Quinn, Belle Fourche, S.D., for plaintiff.

Thomas E. Simmons, Rapid City, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

BOGUE, Senior District Judge.

On March 19, 1991, Defendant American Colloid Company filed with this Court motions to dismiss or for judgment on the pleadings in two separate cases: *Ivan Stedillie v. American Colloid Company*, CIV.91–5015, 767 F.Supp. 1502; and *Monte Talkington v. American Colloid Company*, CIV.91–5014. Plaintiffs, both of whom are represented by the same counsel, filed appropriate responses; and, Defendant replied accordingly. Specifically, Defendant contends that Plaintiff in this case failed to state a cause of action upon which relief can be granted under South Dakota law.

*See* Fed.R.Civ.P. 12(b)(6) and 12(c); SDCL 60–4–4.

### Decision

■ The purpose of a motion to dismiss under Rule 12(b)(6), or in the alternative, a motion for judgment on the pleadings under Rule 12(c),[1] is to assess the legal feasibility of the complaint, not to weigh the evidence which Plaintiff offers or intends to offer. Such a blunt tool should not be used simply because the Court doubts the factual merit of Plaintiff's case. *Schieffelin & Co. v. Jack Co. of Boca*, 725 F.Supp. 1314 (S.D.N.Y.1989). Thus, a case should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ It is within the Court's discretion, however, under appropriate circumstances, to convert a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56 [of the Fed.R.Civ.P.]. Rule 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of a pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

■ Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to relief at summary judgment only if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." *Jane Doe A v. Special School Dist. of St. Louis County*, 682 F.Supp. 451 (E.D.Mo. 1988), citing *Pollard v. Columbia Broadcasting, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In determining wheth-

---

1. Under Rule 12(b)(6) of the Fed.R.Civ.P., a "claim for relief in any pleading" must be dismissed if it "fail[s] to state claim upon which relief can be granted". Rule 12(c) provides that a party may move for judgment on the pleadings at the appropriate time. In either case, this Court subjects the plea for relief to the same level of scrutiny.

er judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, this Court views the evidence presented based upon which party has the burden of proof within the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Recently, the Supreme Court noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Therefore, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," *Matsushita*, 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

### Breach of Contract

In 1973, Plaintiff went to work for Defendant American Colloid Company. Plain-

tiff did not enter into a written employment contract with Defendant, nor did Plaintiff have a specified term of employment. Sometime in early March, 1985, Plaintiff's employment with Defendant was terminated. Under South Dakota law, "[a]n employment having no specified term may be terminated at the will of either party ..." SDCL 60–4–4. And, "[d]espite numerous challenges, the employment-at-will doctrine is still the law in South Dakota." *Larson v. Kreiser's, Inc.*, 427 N.W.2d 833, 834 (S.D.1988).

In *Osterkamp v. Alkota Mfg. Inc.*, 332 N.W.2d 275 (S.D.1983), however, the South Dakota Supreme Court recognized a narrow contract-based exception to the at-will employment doctrine.[2] This two-pronged "handbook" exception was later articulated in *Butterfield v. Citibank of South Dakota*, 437 N.W.2d 857 (S.D.1989). First, such an agreement may be found where the employee handbook *explicitly provides*, in the same or comparable language, that discharge can be "for cause only." *Id.* at 859. [emphasis added]. Second, a "for cause only" agreement may be implied where the handbook contains a *detailed list of exclusive grounds* for employee discipline or discharge and, a *mandatory and specific procedure* which the employer agrees to follow prior to any employee's termination. *Id.* (emphasis added). "In short, the handbook must contain language indicating a *clear intention* on the employer's part to surrender its statutory power to terminate its employees at will (SDCL 60–4–4)." *Id.* [emphasis added].

■ Plaintiff contends that language in Defendant's employee handbook can be construed as creating a discharge "for

---

**2.** There are in fact only three very narrow exceptions to South Dakota's at-will employment doctrine. First, a contract-based exception is recognized if the employee handbook states with specificity that the employee can be discharged only "for cause"; or, the handbook provides a list of exclusive grounds for employee termination. *See Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983). Second, an employee may bring an action in tort for wrongful termination if the employer discharges the employee for refusing to commit a criminal act. *See Johnson v. Krieser's, Inc.*, 433 N.W.2d 225 (S.D.1988). Third, on a single occasion, the South Dakota Supreme Court recognized the viability of a specific promise that the employee would become president of the company. *Larson v. Kreiser's, Inc.*, 427 N.W.2d 833 (S.D.1988). Plaintiff, however, raises no issue of material fact which falls within these three narrow exceptions.

**1498**

cause only" agreement. Defendant's handbook, however, contains not a single item, nor a series of items, sufficient to generate a genuine issue of material fact for trial. *See* Fed.R.Civ.P. 56(c). Plaintiff refers to several areas of the handbook—a pamphlet which actually does nothing more than "outline employer expectations, enumerate a code of conduct, and provide an assortment of information regarding personnel matters and general company policies," *Bauer v. American Freight Systems,* 422 N.W.2d 435, 439 (S.D.1988) [3]—for the proposition that a "for cause" agreement was created. Below is a list of all passages from Defendant's employee handbook which even tangentially relate to employee discharge:

1. If you are absent for three days, and do not report to your supervisor, it is possible that you will be considered automatically terminated.

2. At the completion of the [90 day] probationary period, you will become a permanent employee.

3. If you act as a reasonable, law-abiding citizen, and do your job well, you will get along well and enjoy your membership in the family of American Colloid's employees.

4. If you are dismissed, a full explanation for the reasons, given to you by your supervisor, will be provided.

This list is exhaustive and each item on the list comes from a different section of the employee handbook. Far from "explicitly provid[ing], in the same or comparable language, that discharge can be for cause only," *Butterfield,* 437 N.W.2d at 859, this array of statements fails to even mention the issue of "for cause" termination. Further, the items enumerated can hardly be

defined as a "detailed list of exclusive grounds for employee discipline or discharge." *Id.* More importantly, nothing in the list—or, for that matter, in the entire employee handbook—even remotely resembles "mandatory and specific procedures which the employer agrees to follow prior to an employee's termination." *Id.*

The handbook in this case does nothing more than reduce to writing Defendant's dream of an optimal working environment. And, unlike the handbook in *Bauer,* which at least contained an enumerated list referring to employee termination and discharge [yet was insufficient to survive summary judgment], the American Colloid handbook is simply a series of neutral statements designed to assuage employee discontent and encourage employer-employee dialogue. As the South Dakota Supreme Court noted in *Bauer,* "the general termination provisions in the handbook do not contain any procedures for terminating an employee, unlike the very specific provisions applied in *Osterkamp.*" *Jones v. E G & G Idaho, Inc.,* 111 Idaho 591, 726 P.2d 703 (Idaho 1986).

Moreover, Plaintiff's contention that oral assurances were made regarding permanent employment has no effect on the employment-at-will doctrine. "It is usually held that a promise of lifetime or permanent employment will be interpreted as indefinite and terminable at-will in the absence of some executed consideration in addition to the services being rendered." *Merritt v. Edson Exp., Inc.,* 437 N.W.2d 528, 530 (S.D.1989). Notwithstanding Plaintiff's claim that he "executed consideration" because he was discouraged from holding a second job, he is still an at-will employee.[4]

**3.** In *Bauer,* the trial court was confronted with an employee handbook which replicated the provisions contained in the handbook in this case. The South Dakota Supreme Court affirmed summary judgment dismissal, stating "[t]here are no *mandatory* provisions and *no specified procedures.*" *Bauer,* 422 N.W.2d at 438. Again referring to the handbook, and citing the Minnesota Supreme Court with approval, the high court noted, " 'fair play and just and equitable dealings,' is too general to confer any specific rights on which a breach of contract

claim can be based. 'General statements of policy [in a personnel handbook] do not meet the contractual requirements of an offer [sufficient to create an employment contract].' " *Id.,* citing *Lewis v. Equitable Life Assurance Soc.,* 389 N.W.2d 876 (Minn.1986).

**4.** Under "Other Employment," Defendant's employee manual provides: "The Company does not wish to interfere with your personal affairs or control your time away from the job. However, we have found that other full time employ-

The at-will employment doctrine has been challenged on numerous occasions.[5] Nevertheless, it is still the law in South Dakota. *Osterkamp; Johnson v. Krieser's, Inc.,* 433 N.W.2d 225 (S.D.1988); *Larson v. Krieser's, Inc.,* 427 N.W.2d 833 (S.D.1988); *Merritt; Butterfield.* Accordingly, because Plaintiff had no written contract; no specified term of employment; no handbook with a discharge "for cause only" provision; no detailed list of exclusive grounds for termination; and, no mandatory and specific procedure which the employer agreed to follow prior to terminating any employee, Plaintiff is terminable at the will of Defendant. SDCL 60–4–4.

### Summary Proceedings

Because this Court converted Defendant's motion to dismiss into a motion for summary judgment, each party was given "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See* Fed.R.Civ.P. 12(b)(6). Plaintiff's supplemental affidavit, however, raises no issues of material fact sufficient to alter Plaintiff's at-will employment status.

The fact that Plaintiff was paid an annual salary, and no overtime, has no impact on the employment-at-will doctrine. "The modern rule is that in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year but is terminable at will by either party." *Sullivan v. Heritage Foundation,* 399 A.2d 856

(D.C.App.Ct.1979); *Singh v. Cities Service Oil Company,* 554 P.2d 1367 (Okla.1976); *Horizon Corp. v. Weinberg,* 23 Ariz.App. 215, 531 P.2d 1153, 1155 (1975) ("an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party.") Furthermore, as was stated earlier, any alleged oral assurances made by Defendant to Plaintiff regarding permanent or lifetime employment are insufficient to create a contract of employment. *See Merritt v. Edson Exp., Inc.,* 437 N.W.2d 528, 530 (S.D.1989).

Finally, Plaintiff alleges that a Secrecy Agreement containing a non-compete clause manifests additional consideration sufficient to alter Plaintiff's employment-at-will status. In *Merritt,* the South Dakota Supreme Court—in dicta—reasoned "that a promise of lifetime or permanent employment will be interpreted as indefinite and terminable at will in the absence of some executed consideration in addition to the services being rendered." *Merritt,* 437 N.W.2d at 530. Although this statement appears as dicta in a case in which its discussion and application were unnecessary,[6] this Court must take the position that if confronted with this issue, South Dakota's highest court would adopt the analysis from the above-quoted passage in *Merritt.* Consequently, this Court will do likewise.

The question of what constitutes additional consideration must be determined on a case-by-case basis. *Albert v. Davenport*

---

ment generally interferes with your work here. Therefore, we look with disfavor on attempts to hold more than one full time job."

**5.** The South Dakota Supreme Court cited the Supreme Court of Oregon with approval: "In the absence of any evidence of express or implied agreement whereby the employer contracted away its ... prerogative [to determine whether facts constituting cause for termination exist] to some other arbiter, we shall not infer it." *Butterfield v. Citibank of South Dakota,* 437 N.W.2d 857, 859 (S.D.1989), citing *Simpson v. Western Graphics Corp.,* 293 Or. 96, 643 P.2d 1276, 1279 (1982).

**6.** Actually, if the "additional consideration" theory is perceived as an expansion of South Dakota's at-will employment doctrine, *Merritt* provided wonderful facts for its successful application. As Justice Sabers pointed out in his dissent, Merritt conceivably relied on statements made to him by Edson before moving his entire family from Billings, Montana to Rapid City, South Dakota. Although this move would appear to be "additional consideration," the South Dakota Supreme Court concluded that Merritt "fail[ed] to show the existence of any such additional consideration in this case." *Merritt,* 437 N.W.2d at 530.

*Osteopathic Hospital,* 385 N.W.2d 237, 238–39 (Iowa 1986). In the present case, the first step in the analysis is whether or not Plaintiff was promised lifetime or permanent employment.[7] *Merritt,* 437 N.W.2d at 530. That issue is irrelevant, however, if the additional consideration offered is insufficient to diffuse Plaintiff's at-will employment status.

Plaintiff, while employed by Defendant, executed a Secrecy Agreement containing a non-compete clause,[8] which reads as follows:

> 4. Employee further agrees during his employment and for a period of three (3) years after the termination of his employment he will not engage in the development, manufacture or sale of bentonite or other products then being developed, manufactured or sold by the Company, either directly or indirectly, as principal, agent, employee or consultant for any firm or corporation ... without the prior written consent of the Company.

This Court takes the position that such a standard non-compete agreement—"boilerplate" language in an otherwise innocuous document—does not constitute a waiver of Defendant's right to terminate Plaintiff at-will. In a similar case, an employee working for a medical products manufacturing company executed an agreement whereby her employer "would have all rights to any inventions or improvements she might make or conceive and that she would not divulge the employer's confidential information." *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 545 A.2d 334 (Pa.Super.1988). The Superior Court of Pennsylvania concluded that the at-will employment presumption is not overcome every time a worker sacrifices theoretical rights and privileges. *Id.* 545 A.2d at 339.

In *Parker v. United Airlines,* 32 Wash. App. 722, 649 P.2d 181 (1982), an employee was similarly required to assign to United inventions conceived during the course of employment. The Washington Court of Appeals concluded rather succinctly that such an agreement does not constitute "additional and independent consideration [sufficient] to defeat United's right to terminate employment at will." *Id.* at 183.

This Court is aware that a distinction exists between an agreement not to compete after employment is terminated, and an agreement which provides for the assignment of rights to inventions conceived during the term of employment. Nevertheless, these separate agreements, while distinct, are not fundamentally different. Each case involves "some consideration beyond what is normally involved in the employment relationship itself." *Corum v. Farm Credit Serv.,* 628 F.Supp. 707, 713 (D.Minn.1986). The employee in *Parker,* in addition to her employment responsibilities—for which she was paid—was required to execute additional consideration in the form of an assignment of rights to potential inventions. In *Scott,* the employee was required to endorse a similar document. In both situations, however, the employee's future "theoretical" rights, though sacrificed, were found to be insufficient to overcome the employer's right to terminate employment at will.

Plaintiff's consideration, though quantified in time, is no less talismanic than the consideration offered by the employees in *Scott* and *Parker.* The conception of an invention, and an employee's right to mar-

---

7. "Contracts expressly offering lifetime or permanent employment or which a trier of fact has interpreted as offering such employment based on extrinsic evidence will be interpreted as indefinite and terminable at will in the absence of some executed consideration in addition to the services being rendered." *Wolfe v. Grather,* 389 N.W.2d 643, 652 (Iowa 1986). This Court has already concluded that Defendant's handbook did not rise to the level of an employment contract or a "discharge for cause only" agreement. Therefore, no contract exists either expressly to offer permanent or lifetime employ-

ment, or for the trier of fact to interpret as offering such extended employment.

8. At the hearing on this matter, a secrecy agreement was presented bearing Mr. Talkington's signature. No such agreement was presented for Mr. Stedillie. Nevertheless, even if a similar agreement was located [for Stedillie], this Court takes the position that the secrecy agreement does not remove either Plaintiff from the at-will employment doctrine.

ket in the future the rights to that invention, is no more "theoretical" than Plaintiff's potential employment future in the bentonite industry. Neither form of consideration represents a measured sacrifice by the employee; and, neither evinces "a clear intention [by the employer] to surrender its statutory power to terminate its employees at will (SDCL 60–4–4)." *Butterfield v. Citibank of South Dakota,* 437 N.W.2d at 857. This Court is confident that, if confronted with this issue, the South Dakota Supreme Court would conclude that a "boilerplate" non-compete clause is insufficient additional consideration to overcome the presumption of at-will employment.

### Good Faith and Fair Dealing

■ Plaintiff claims that Defendant breached an implied covenant of good faith and fair dealing. The South Dakota Supreme Court articulated, in no uncertain terms, its position on this issue:

> This Court has made it abundantly clear that we reject a cause of action based on breach of an implied covenant of good faith and fair dealing. In *Breen v. Dakota Gear and Joint Co., Inc.,* 433 N.W.2d 221, 224 (S.D.1988), we said: 'We … join the Supreme Court of Kansas in rejecting transplantation of the covenant and good faith and fair dealing into the foreign soil of the employment-at-will doctrine.'

*Peterson v. Glory House of Sioux Falls,* 443 N.W.2d 653, 655 (S.D.1989).

9. Plaintiff's Complaint actually delineates three causes of action: *Count I*—Breach of Contract; *Count II*—Breach of Implied Covenant of Good Faith and Fair Dealing; and *Count III*—Promissory Estoppel. Under the *Punitive Damages* heading, Plaintiff appears to address two other issues: (1) negligent disregard for plaintiff's welfare; and, (2) intentional tort of wrongful termination.

10. In *Larson v. Kreiser's Inc.,* 427 N.W.2d 833 (S.D.1988), the South Dakota Supreme Court recognized the potential existence of an oral contract, but only "because of the specific promise that [Larson] would become president of the company." *Id.* at 834. It is important to note that the South Dakota Supreme Court went on to anticipate facts similar to the ones before this Court: "[W]e note this case is clearly distinguishable from our decisions in *Hopes* [*v. Black*

This Court will not attempt to either add or detract from language which is unmistakably clear. The claim for breach of an implied covenant of good faith and fair dealing must be dismissed; and for the same reason, Plaintiff's claim of negligence must be dismissed, each for failing to raise a genuine issue of fact for trial.[9]

### Promissory Estoppel

■ Plaintiff claims that Defendant is estopped from denying the existence of a contract because Defendant allegedly made an oral promise to Plaintiff of permanent employment. Regarding such promises, the South Dakota Supreme Court reasoned that "a promise of lifetime or permanent employment will be interpreted as indefinite and terminable at-will." *Merritt,* 437 N.W.2d at 530. As we indicated earlier, there is no contract, nor is there a specific period of employment.[10] Accordingly, Plaintiff's claim of promissory estoppel has no greater legal merit than his breach of contract claim. Thus, Plaintiff's claim for relief through promissory estoppel fails to raise a material issue of fact for trial.

### Wrongful Termination

■ South Dakota recognizes only one narrow exception to its rejection of the tort action of wrongful termination: A tort action against an employer will survive if an employee is terminated for refusing to commit a criminal act.[11]

*Hills Power and Light Co.*], *supra* [386 N.W.2d 490] [S.D.1986], and *Tombollo* [*v. Dunn*], *supra* [342 N.W.2d 23] [S.D.1984], since those cases did not involve an employer's promise to hire an employee for a particular position." *Id.*

11. South Dakota recognizes the tort of wrongful termination, and the policy motivation behind such a claim in an at-will employment context. "[T]he rule giving the employer the absolute right to discharge an at-will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge." *Johnson,* 433 N.W.2d at 225. While the South Dakota Supreme Court adopted this principle, its application is restricted to a singular set of circumstances.

**1502**

"We find. the foregoing cases to be persuasive and hereby adopt a narrow public policy exception to the at-will doctrine. An employee has a cause of action for wrongful discharge when the employer discharges him in retaliation for his refusal to commit a criminal act."

*Johnson,* 433 N.W.2d at 227.

There are no other exceptions. When the highest court of this State expands that list, this Court will recognize other public policy exceptions, but no sooner. Therefore, Plaintiff's claim against Defendant for wrongful termination in tort must be dismissed for failing to raise a genuine issue of fact for trial.

### Statute of Limitations

This Court's disposition of the substantive issues makes it unnecessary to address the statute of limitations claim.

### Conclusion

The trilogy of *Celotex, Anderson,* and *Matsushita* provide this Court with a methodology for analyzing Defendant's motion for summary judgment. Under this trilogy, it is incumbent upon Plaintiff, based upon the showing set forth by Defendant, to come forward with specific facts demonstrating that there is a genuine issue in order to counter Defendant's summary judgment motion. *Cf. Women's Health of W. County v. Webster,* 871 F.2d 1377, 1383 n. 9 (8th Cir.1989). Plaintiff has failed to meet this burden. Therefore, there being good cause appearing, it is hereby

ORDERED that Defendant's motions to dismiss as to Plaintiff's claims for breach of contract, breach of an implied covenant of good faith and fair dealing, promissory estoppel, negligence, and wrongful termination are hereby converted to motions for summary judgment, and each such motion is granted.