Robert D. ZAVADIL, Plaintiff,

v.

ALCOA EXTRUSIONS,
INC., Defendant.

No. CIV. 04–4013.

United States District Court,
D. South Dakota,
Southern Division.

Feb. 28, 2005.

Scott N. Heidepriem, Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, SD, for Plaintiff.

Jon C. Sogn, Lynn, Jackson, Shultz & Lebrun, Sioux Falls, SD, Paul Amata, Shelly R. Pagan, LeBoeuf, Lamb, Greene & MacRae, LLP, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Plaintiff, Robert D. Zavadil, filed his Complaint in this diversity action, alleging breach of contract with regard to his employment with Defendant, Alcoa Extrusions, Inc. Doc. 1. Defendant submitted a document entitled "Motion to Dismiss or, in the alternative, for Summary Judgment." Doc. 5. Attached as Exhibit A to this Motion are portions of the Employee Handbook that was issued by Defendant to Plaintiff during Plaintiff's employment. The parties have also submitted a Statement of Material Facts (Doc. 9) and a response to the Statement of Material Facts (Doc. 18). Since the Court is considering Exhibit A to the Motion to Dismiss, as well as the Statement of Material Facts and response thereto in resolving this matter, and since these documents contain matters outside Plaintiff's complaint, this Court is treating Defendant's motion as a motion for summary judgment. *See* Fed. R.Evid. 12(b).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## FACTUAL BACKGROUND

Plaintiff worked as a shift supervisor for Defendant in its Yankton, South Dakota, plant from 1996 until his employment was terminated in January of 2003. On March 16, 2000, Plaintiff signed an Employee Receipt for Defendant's Employee Handbook. The introduction to the Employee Handbook states: "The contents of this handbook state the philosophy, policies and current procedures of your Company; they are subject to change from time to time as the Company may decide without prior notice to (or with the consent of) the employees." A footnote to the introduction states, "The policies and procedures contained in the handbook are intended as guidelines only and are subject to change at the sole discretion of the Company."

In a section of the Employee Handbook entitled "Employment at Will," the following advisement is made:

Although we expect that your employment relationship with us will be mutually beneficial, in accordance with South Dakota state laws, your employment is "at will" and either you or Alcoa Extruded Construction Products may terminate your employment at any time, for any reason, with or without cause or notice.

The contents of this booklet are not intended to be, nor do they constitute a contract of employment.

The provisions of this handbook are not intended to, nor do they represent a binding agreement or promise.

In a section of the Employee Handbook entitled "Personal Behavior," a list of examples of unacceptable conduct which are grounds for immediate discharge are given. However, this section of the Employee Handbook contains the following disclaimer: *"This list is not all-inclusive, nor is it intended to restrict the employment-at-will status of the employee or Company. The Company reserves the right to discipline and/or terminate an employee for reasons other than those listed below."*

The Employee Handbook contains a section entitled "Termination Review" which states:

At Alcoa Extruded Construction Products Yankton Operation, we take the decision to terminate employment very seriously. While we are an "At Will" employer, we give each regular employee the opportunity to have his termination reviewed by the General Manager of the operation. You may request this review by submitting, in writing, a letter which requests the review and describes the reasons why you feel the decision to terminate should be changed.

The introduction to the Employee Handbook provides that any changes to the handbook will be publicized. Subsequent to distribution of the Employee Handbook, Defendant publicized its "Peer Review Policy and Procedures,"which was attached as

Exhibit 1 to Plaintiff's Complaint, and which was relied upon by Plaintiff in support of his breach of contract allegations. The Introduction to the "Peer Review Policy and Procedures" explains:

[T]he Company recognizes that from time to time an employee may encounter a problem, concern or complaint that if left unresolved could affect job satisfaction and work performance.

As always, employees are encouraged to speak up when they have a concern or complaint about how the application of a company policy has affected them. Alcoa Extruded Construction Products' Open Door Policy provides access to any member of management or Human Resources with whom an employee wishes to express a concern.

However, when an individual is faced with a situation that has not been satisfactorily resolved by traditional means, the Peer Review Process may be utilized. Peer Review is a formal problem-solving process designed to ensure that each employee's concerns are given careful consideration and conflicts are resolved quickly, fairly and confidentially.

The above policy provides for Peer Review Panels which hear appeals involving the application of policies, procedures, established practices and work rules involving Defendant's Employees. The policy provides that the Peer Review Panels "may review management's actions to ensure that the policy or practice was applied properly and consistently." If the Peer Review Panels determine that the policy or practice was not applied properly and consistently, they have the authority under the policy to "make appropriate remedies consistent with Company practice and/or policies." On page 3, the "Peer Review Policy and Procedures" points out that "Steps one and two may be bypassed in

cases involving termination of employment." Step 3 on page 4 of the same publication provides, "A final and binding decision will be given by whichever avenue of appeal the appellant chose in Step 3." The peer review policy specifically addresses that termination are covered in the appeals to the Peer Review Panels. A flow chart on page 13 in the published policy sets forth the voting process of the Peer Review Panels in cases involving termination and cases other than termination. The flow chart for termination issues provides: "Vote 'Yes' or 'No' to the question: 'Should the Employee be reinstated?'" The peer review policy establishes that Peer Review Panels have the authority to grant, modify, or deny an appeal. Finally, the policy states that the decisions of the Peer Review Panels are final and binding (page 11).

The peer review policy covers "all full-time employees" of Defendant who have completed their 90–day orientation period. Although Defendant states in its memorandum that it would explain at the appropriate time why the peer review policy did not apply to Plaintiff, the Court is unaware of any exclusion set forth in the peer review policy, which would apply to Plaintiff.

In October of 2002, the United Steelworkers Union began efforts to organize the employees at Defendant's plant at Yankton, South Dakota. Plaintiff contends that one of the mechanics he supervised told Defendant's Human Resources Manager that Plaintiff supported the Union. Plaintiff's supervisor then called Plaintiff into his office and advised Plaintiff that if he ever supported the Union, he would be "looking for another job." Plaintiff denied supporting the Union.

Plaintiff contends that when Union activity picked up momentum in January of 2003, he was called into his supervisor's office and questioned by the manufacturing manager about an allegedly careless remark he had made a month before to the manager of Environment, Health and Safety about safety guards. Plaintiff and other supervisors attended a meeting on January 14, 2003. At this meeting, Defendant's corporate labor attorney asked the supervisors to share their thoughts on why employees were interested in organizing. Plaintiff advised the attorney that he thought technician pay was the main concern of the maintenance personnel. The next morning Plaintiff was called into his supervisor's office and the manufacturing manager questioned Plaintiff about discussing pay with other supervisors and department managers and also brought up the allegedly careless remark that had been previously discussed. The manufacturing manager then informed Plaintiff that he was being suspended without pay pending an investigation. On January 21, 2003, the manufacturing manager informed Plaintiff that he was being terminated because of a safety violation and because he had talked with other shift supervisors about wages.

When the manufacturing manager informed Plaintiff that he was being terminated, Plaintiff inquired whether he could appeal the decision to a Peer Review Panel. The manufacturing manager advised Plaintiff that he did not know if he could take such an appeal. On January 24, 2003,[1] Plaintiff contacted the Corporate Human Resources Manager and again asked if he could appeal the termination decision to a Peer Review Panel. The Corporate Human Resources Manager advised that he could not appeal the termination decision to a Peer Review Panel, but refused to provide an explanation. In

---

**1.** The Peer Review Policy and Procedures provides that employees are encouraged to first use the Open Door Policy to resolve their concern with their immediate supervisor.

a letter dated January 25, 2003, Plaintiff requested a written explanation of why he was denied use of the policy. Two months later, Defendant responded to Plaintiff's request, stating that the Peer Review Policy and Procedures could only be utilized by non-exempt salaried and hourly employees. Plaintiff then brought this breach of contract action based on the denial of his use of the Peer Review Policy and Procedures.

## DISCUSSION

■■■ The at-will-employment doctrine exists in South Dakota. The doctrine is codified and reads: "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute." S.D.C.L. § 60–4–4. Wrongful termination suits are subject to the at-will doctrine. *Bass v. Happy Rest, Inc.*, 507 N.W.2d 317, 320 n. 5 (S.D.1993). Employees may be terminated at will in South Dakota, except for (1) terminations that contravene public policy, (2) employees with express "for cause only" agreements or implied "for cause only" cases where an employee handbook contains a detailed list of exclusive grounds for discharge and a mandatory specific procedure that the employer agrees to follow, or (3) an employee who accepted employment after being promised future promotion to a certain position. *Meyers v. American States Ins. Co.*, 926 F.Supp. 904, 910 (D.S.D.1996); *Bass v. Happy Rest, Inc.*, 507 N.W.2d at 321 (footnotes omitted). Whether an employee is an at-will employee is a question of law. *Richardson v. East River Elec. Power Co-op., Inc.*, 531 N.W.2d 23, 27 (S.D. 1995). In the case at hand, the second exception to the employment-at-will doctrine will be considered. .

In *Osterkamp v. Alkota Mfg., Inc.*, the South Dakota Supreme Court held a handbook stating, "The Company will not discharge nor give disciplinary layoff to any employee without just cause," and providing a detailed procedure for corrective discipline, created an employment contract. 332 N.W.2d 275, 277 (S.D.1983). South Dakota further refined the *Osterkamp* exception in *Butterfield v. Citibank of S.D., N.A.*, by more clearly articulating "two possible ways an employee handbook could create a 'for cause only' agreement":

First, such an agreement may be found where the handbook explicitly provides, in the same or comparable language, that discharge can occur "for cause only." Second, a "for cause only" agreement may be implied where the handbook contains a detailed list of exclusive grounds for employee discipline or discharge and, a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination.

437 N.W.2d 857, 859 (S.D.1989) (citations omitted), *quoted in Meyers v. American States Ins. Co.*, 926 F.Supp. at 911.

■■ The Employee Handbook in this case, standing alone, does not create a "for cause only" agreement by containing a detailed list of exclusive grounds for termination. The grounds listed in the Employee Handbook for immediate discharge contains the following unambiguous disclaimer: *"This list is not all-inclusive, nor is it intended to restrict the employment-at-will status of the employee or Company. The Company reserves the right to discipline and/or terminate an employee for reasons other than those listed below."*

■■ Also, the Employee Handbook itself does not contain a mandatory and specific procedure which the employer agrees to follow prior to terminating an employee's employment. The open door policy and Termination Review provision of the Employee Handbook are not mandatory provisions and the Employee

Handbook clearly states that none of its provisions "constitute a contract of employment," nor "do they represent a binding agreement or promise." The disclaimers in the Employee Handbook, prior to the implementation of the subsequently-enacted Peer Review Policy and Procedures, would have been sufficient to reserve to an employer the right to discharge an employee at will, and the exercise of that right would have been final. *See Meyers v. American States Ins. Co.*, 926 F.Supp. at 912.

Plaintiff's cause of action for breach of contract, however, is predicated on the Peer Review Policy and Procedures, not the Employee Handbook. Defendant contends that the Peer Review Policy and Procedures does not set forth any procedures which must be taken prior to discipline or termination, but that the Peer Review Policy and Procedures merely sets forth a policy which *may* apply *after* an employee has been disciplined. Defendant contends that a "for cause only" agreement may be implied under *Butterfield v. Citibank of S.D., N.A.*, where there exists a specific procedure which the employer agrees to follow *prior* to any employee's termination.

Plaintiff contends that the Peer Review Policy and Procedures provides a specific procedure that Defendant has agreed to follow if an employee should choose to invoke the same. Plaintiff acknowledges that the Peer Review Policy and Procedures provides that "when an individual is faced with a situation that has not been satisfactorily resolved by traditional means, the Peer Review Process *may* be utilized."(emphasis added). However, Plaintiff contends that the permissive term "may" merely conveys that an employees has the opportunity to avail himself of the peer review process but is not required to do so. Plaintiff further contends that the use of the permissive term "may" in this

above provision does not indicate that the peer review process is anything but mandatory if properly invoked by an employee. The Court agrees with Plaintiff that the peer review process is mandatory if properly invoked by an employee entitled to use the peer review process.

Defendant contends that he peer review procedure is similar to procedures in other cases that were found to not create a contract. Defendant relies upon *Stedillie v. American Colloid Co.*, 967 F.2d 274(8th Cir.1992), in which the Eighth Circuit analyzed the employment-at-will doctrine in South Dakota. The handbook language that applied to the two employees who were discharged in the *Stedillie* case provided as follows:

> If you are dismissed, a full explanation for the reasons, given to you by your supervisor, will be provided.
>
> The Personnel Department conducts exit interviews with all terminating employees.

*Id.* at 275. Neither of the discharged employees in the *Stedillie* case were told the reason for his discharge and neither received an exit interview. The Eighth Circuit concluded that this language did not constitute a "mandatory and specific procedure" which the employer agrees to follow prior to any employee's termination." *Id.* at 277 (*quoting Butterfield, 437 N.W.2d at 859*).

Defendant also relies upon *Talkington v. American Colloid Co.*, 767 F.Supp. 1495 (D.S.D.1991), *aff'd*, 967 F.2d 274 (8th Cir. 1992), a case in which the district court granted the employer's Rule 12(b)(6)motion and found that the policies at issue did not create a contract. In *Talkington*, the handbook provided "if you are dismissed, a full explanation for the reasons, given to you by your supervisor, will be provided." The district court found that the handbook did not create a "for cause only" agree-

ment. The district court characterized the handbook as "simply a series of neutral statements designed to assuage employee discontent and encourage employer-employee dialogue." *Id.* at 1498.

Defendants assert that the Peer Review Policy and Procedures in this case is, like the handbook in *Talkington*, "a series of neutral statements designed to assuage employee discontent and encourage employer-employee dialogue."[2] This Court disagrees with that characterization. The Peer Review Policy and Procedures is far more specific and definite than the neutral statements set for in the *Talkington* and *Stedillie* cases. The Peer Review Policy and Procedures contains no disclaimers of waiving the at-will-employment doctrine that are replete in the Employee Handbook. Furthermore, the Peer Review Policy and Procedures gives the employee the option of utilizing the Peer Review Policy and Procedures, which includes appellate access to Peer Review Panels. These panels can "review management's actions to ensure that the policy or practice was applied properly and consistently."

■ The Peer Review Policy and Procedures specifically includes termination as a subject of management's actions from which an employee can appeal to the Peer Review Panels. In providing a review of Management's termination actions to ensure that a policy or practice was applied properly and consistently, the Peer Review Policy and Procedures entitles those employees utilizing the review process a review which considers whether the termi-

nation was appropriate in consideration of existing policies and practices. Although the disclaimers in the Employee Handbook were initially sufficient to fully reserve Defendant's right to discharge an employee at will, through its Peer Review Policy and Procedures Defendant contracted to modify its statutory power to hire and fire at will to the extent that a discharged employee may utilize the policy and a Peer Review Panel may make a final and binding decision to reinstate an employee that was discharged by Management. Since Defendant has, at this time, failed to demonstrate why the Peer Review Policy and Procedures does not apply to Plaintiff, its "Motion to Dismiss or, in the alternative, for Summary Judgment"is denied and Plaintiff may continue in this action to seek the remedy of utilizing the Peer Review Policy and Procedures (which could among other things order reinstatement) and any damages that may have been caused by the breach of the Peer Review Policy and Procedures. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion to Dismiss or, in the alternative, for Summary Judgment" (Doc. 5) is DENIED.

---

2. Defendant also cites *Holland v. Fem Electric Ass'n, Inc.* 637 N.W.2d 717 (S.D.2001), as a case holding that if an employee was an at-will employee, he was not entitled to any type of post-termination hearing. The South Dakota Supreme Court in *Holland* concluded that the employer had an established Personnel Policy Manual setting forth the procedure to be used for the discipline or termination of one category of employees. Whether the

proper procedure was followed was dependent on the characterization of the Plaintiff's employment. *Id.* at 721. The South Dakota Supreme Court concluded "if the trial court determines that a post-termination hearing is necessary" it must determine whether the requirement was satisfied by the plaintiff's appeal of his termination to the defendant's Board of Directors. *Id.* at 723.