# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 08-2165

_____

John Semple,                                    *
                                                *
            Plaintiff-Appellant,                *
                                                *    Appeal from the United States
      v.                                        *    District Court for the
                                                *    District of South Dakota.
Federal Express Corporation,                    *
                                                *
            Defendant-Appellee.                 *

_____

Submitted: December 12, 2008
Filed: May 29, 2009

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge

_____

GOLDBERG, Judge.

John Semple ("Semple") appeals the district court's grant of Federal Express Corporation's ("Federal Express") motion for summary judgment. For the following reasons, we affirm the decision of the district court.[2]

_____

[1]The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

[2] The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

# I. BACKGROUND

Semple began working for Federal Express in 1990. At the time he was hired, Semple signed an employment contract which included the following statement:

> I do hereby agree . . . (11) That during the time of my employment, which I understand is indefinite, I will comply with the guidelines set forth in the Company's policies, rules, regulations and procedures . . . I ALSO AGREE THAT MY EMPLOYMENT AND COMPENSATION CAN BE TERMINATED WITH OR WITHOUT CAUSE AND WITHOUT NOTICE OR LIABILITY WHATSOEVER, AT ANY TIME, AT THE OPTION OF EITHER THE COMPANY OR MYSELF.

Semple v. Federal Express Corp., No. 06-5056, 2008 WL 1793481, at *1 (D.S.D. Apr. 17, 2008). In addition to his employment contract, Semple received an employment manual.[3] This manual included specific provisions governing: (1) acceptable conduct (Section 2-5);[4] (2) termination (Section 4-90);[5]

---

[3] Semple received multiple versions of the manual over the course of his employment, but the parties reference the 2005 version. Each time Semple received a manual, he signed for its receipt. This signed receipt certified that he had read the handbook, and that the handbook was not contractual in nature as its contents were intended only as guidelines for managers and employees.

[4] Section 2-5 defines "Misconduct" and includes a "not all-inclusive" list of actions potentially meriting termination. This section also contains a "discharge approval" provision which states that two levels of management and a human resources staff member must approve terminations based on employee misconduct. Appellant's App. at 34-37.

[5] Section 4-90 establishes a discharge process and provides an "Employment Termination Chart" which also states that two levels of line management and a human resources staff member must approve terminations based on employee misconduct. Appellant's App. at 40-44.

(3) harassment (Section 5-55);[6] and (4) a Guaranteed Fair Treatment Procedure (GFTP) and EEO Complaint Process.[7]

By 2004, Semple was working as a delivery courier at Federal Express's Rapid City, South Dakota branch. Around this time, his relationship with his direct supervisors began to deteriorate as Semple allegedly experienced offensive and harassing conduct. In September 2005, he filed a formal harassment complaint. Shortly after this complaint was filed, Semple's supervisors investigated his delivery records due to suspicious delays and gaps between deliveries. During this investigation, Semple admitted to scanning at least one package as delivered prior to delivery in order to meet scheduled delivery times. After this investigation, Semple was terminated. Federal Express's stated basis for terminating Semple was for the intentional and deliberate falsification of delivery records in violation of company policies. Semple, however, claims that this was pretextual, and that he was really terminated for filing a harassment complaint. Semple appealed his termination within Federal Express's internal appeals process, and when this appeal was denied, he filed suit in district court. The district court granted summary judgment in favor of Federal Express. Semple now appeals the decision of the district court.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. Nitsche v. CEO of Osage Valley Elec. Coop., 446 F.3d 841, 845 (8th Cir. 2006). A motion for summary judgment should be granted "if the pleadings, the discovery and

---

[6] Section 5-55 defines "harassment" and states that the policy "prohibits all inappropriate language and conduct – regardless of whether that behavior would legally constitute 'harassment.'" The policy also prohibits retaliation against an employer for reporting a harassment claim. Appellant's App. at 53-54.

[7] The GFTP/EEO Complaint Process establishes Federal Express's "procedure for handling employee complaints, problems, concerns, and allegations of employment discrimination. . . ." Appellant's App. at 45-52.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In making this determination, the Court is required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts." AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).

## III. DISCUSSION

Semple raises two arguments on appeal: (1) that the district court erred in granting Federal Express summary judgment on his wrongful termination claims; and (2) that the district court erred in denying his request for company-wide discovery. For the foregoing reasons, we affirm the decision of the district court.

### A. Semple's Wrongful Termination Claim

Semple concedes that his employment with Federal Express was at-will, but argues that an exception to the at-will-employment doctrine places his termination outside its application. Under South Dakota law, "[a]n employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute." S.D.C.L. § 60-4-4 (2004). The at-will employment doctrine applies to wrongful termination claims. Bass v. Happy Rest, Inc., 507 N.W.2d 317, 320 n.5 (S.D. 1993). Accordingly, for Semple to have a valid claim for wrongful termination, his claim must fit within one of the limited exceptions South Dakota has recognized to the at-will employment doctrine. To date, South Dakota has only exempted terminations: (1) that violate public policy; (2) of employees with "for cause only" agreements or implied "for cause only" agreements; and (3) of employees who accept employment after promises of a promotion. Zavadil v. Alcoa Extrusions, Inc., 363 F. Supp. 2d 1187, 1191 (D.S.D. 2005). Semple argues his termination fits into one of the first two categories, and these arguments are addressed in turn.

1. <u>Semple's Public Policy Claim</u>

In South Dakota, courts have recognized that three types of terminations merit application of the public policy exception, terminations for: (1) whistleblowing; (2) filing workers' compensation claims; and (3) failing to commit a requested crime. <u>Dahl v. Combined Ins. Co.</u>, 621 N.W.2d 163, 166-67 (S.D. 2001). Semple does not attempt to fit his termination within these categories, but instead argues that his termination in response to filing a harassment complaint also violates substantial public policy and merits exemption. This argument, at least in the circumstances of the current case, lacks merit.

To state a cause of action under the public policy exception, the employee must plead that a substantial public policy may have been violated. <u>Johnson v. Kreiser's, Inc.</u>, 433 N.W.2d 225, 227 (S.D. 1988). Whether the act complained of ultimately violates "a clear mandate of a substantial public policy is a question of law." <u>Niesant v. Homestake Mining Co.</u>, 505 N.W.2d 781, 783 (S.D. 1993). Substantial public policies are "found in the letter or purpose of a constitutional or statutory provision or scheme, or in a judicial decision." <u>Id.</u> Semple argues that Federal Express's employment manual essentially adopts the protections set forth by Title VII of the Civil Rights Act of 1964 ("Title VII") and the South Dakota Human Rights Act ("SDHRA"), and to the extent that Federal Express provided any additional protections, the company contractually modified its at-will statutory power. In short, Semple argues that "[i]f FedEx violated its own policy, which is based in large part upon well-established South Dakota and federal law and public policy, then that conduct . . . would also constitute a violation of public policy." Appellant's Reply Brief at 3.

There is no basis for this Court to expand the public policy exception to the at-will employment doctrine in South Dakota to include the alleged harassment in the current case. This potential harassment, while reprehensible, does not fall within a category protected by either Title VII or the SDHRA, but only Federal Express's

employment manual. Even if Section 5-55 of Federal Express's employment manual provided additional workplace protections, Semple's remedy is in contract, not in the public policy exception. In short, as Federal Express cannot modify the public policy of the state of South Dakota, Semple has failed to plead or prove that a substantial public policy was violated. Johnson, 433 N.W.2d at 227.

2. Semple's Breach of Contract Claim

Semple's second wrongful termination argument is that Federal Express's employment manual created an employment contract which the company breached in terminating him from his delivery courier position. However, a contract based upon an employee handbook will only be implied "where the handbook contains [1] a detailed list of exclusive grounds for employee discipline or discharge and [2] a mandatory and specific procedure which the employer agrees to follow prior to any employee's termination." Hollander v. Douglas County, 620 N.W.2d 181, 185 (S.D. 2000) (citing Butterfield v. Citibank of South Dakota, N.A., 437 N.W.2d 857, 859 (S.D. 1989). In order to establish an implied contract, both prongs of the Butterfield test must be met. Federal Express's employment manual does not create an implied for cause contract because it fails to satisfy either prong.

Semple first claims that Section 2-5 of Federal Express's employment manual constitutes a "detailed list of exclusive grounds for termination." However, Section 2-5 prefaces its list of potential grounds for termination with the following disclaimer: "[a]lthough the following list is not all-inclusive, the following specific violations may result in severe disciplinary action up to and including termination for employees or dismissal for vendors. This list is not all-inclusive." Appellant's App. at 36. Section 2-5 then concludes with another disclaimer, reiterating that "the policies and procedures set forth in this manual provide guidelines for management and employees during employment but do not create contractual rights regarding termination or otherwise." Id. at 39.

As far as a mandatory and specific termination procedure is concerned, Semple points to Section 4-90 of the employment manual. Section 4-90 provides that "[t]he Employment Termination Table [Table 1] must be referenced . . . ." Id. at 40. Table 1 provides that two levels of line management and a Human Resources staff member must approve a termination. Id. at 43. Section 4-90 also contains a disclaimer providing that this provision does not create contractual rights but only constitutes internal guidelines for management and employees needing to terminate an employee.

Overall, the provisions and disclaimers referenced by Semple mirror those discussed in Zavadil v. Alcoa Extrusions, Inc., 363 F. Supp. 2d 1187, 1191-92 (D.S.D. 2005); see also Aberle v. City of Aberdeen, 718 N.W.2d 615 (S.D. 2006). In Zavadil, the court noted the employee handbook contained disclaimers stating that the handbook did not "constitute a contract of employment," nor "represent a binding agreement or promise." Id. at 1192. The court then concluded that these disclaimers were sufficient to "reserve to the employer the right to discharge an employee at will." Id. As we find no substantive difference between these disclaimers and those found in Federal Express's Employee Handbook, we similarly find that Federal Express preserved its right to discharge employees at-will.[8]

_____

[8]Semple separately argues that Federal Express contractually modified its right to terminate its employees at-will through several mandatory procedures which the company included in its employment manual. Semple's argument is based upon Zavadil v. Alcoa Extrusions, Inc., 363 F. Supp. 2d 1187 (D.S.D. 2005), and Meyers v. American States, 926 F. Supp. 904 (D.S.D. 1996). In both cases, the district courts found that although the companies preserved their overall at-will rights, they had contractually agreed to follow specific procedures established in their handbooks. Zavadil, 363 F. Supp. 2d at 1193; Meyers, 926 F. Supp. at 912. In both cases, the district courts utilized the Butterfield analysis to determine that specific procedures provided detailed and exclusive lists of the grounds for termination and specific and mandatory termination procedures. Zavadil, 363 F. Supp. 2d at 1192; Meyers, 926 F. Supp. at 912-13. Semple's case differs from both Zavadil and Meyers, however, as even assuming that it is appropriate to look

-7-

## B. Semple's Discovery Request

Last, Semple argues that the district court erred in not granting him company-wide discovery. At the time of his termination, Semple was an employee at Federal Express's Rapid City, South Dakota branch. Semple was terminated by the manager of this local branch, along with other representatives of the company's Northland District. After filing his wrongful termination suit, Semple requested company-wide discovery to examine how Federal Express interpreted and applied Section 2-5 of its employment manual, which governs document falsification, in all of its branches. Federal Express objected to the scope of this request, but agreed to furnish all materials from the Northland district. The district court, upon consideration of this concession, limited the scope of Semple's discovery. Semple now argues that the district court erred in limiting his discovery because Federal Express's policy applied nationwide, and because managers at the company's corporate offices were involved in reviewing the termination decision.

District court decisions limiting discovery are reviewed for abuse of discretion. LaSalle v. Mercantile Bancorporation, Inc., 498 F.3d 805, 811 (8th Cir. 2007). Generally, a plaintiff in a wrongful termination case is not entitled to company-wide discovery absent a showing of a particular need for the requested information. Carman v. McDonnell Douglas Corp., 114 F.3d 790, 792 (8th Cir. 1997). Here, Semple cannot establish a particular need for the materials requested throughout Federal Express. For instance, in Finch v. Hercules Incorporated, company-wide discovery was only appropriate because the employee was terminated due to a corporate-level downsizing decision, a decision only implemented at the company's local level. 149 F.R.D. 60, 62 (D. Del. 1993). There are no facts in the current case

at individual handbook procedures in isolation, Semple is unable to point to any single procedure which meets both prongs of the Butterfield analysis. Accordingly, Semple's argument on this point also fails.

indicating that Federal Express's management beyond the Northland District was involved in Semple's termination beyond review through the company's internal appeals process. The fact that this policy applied nationally has little bearing on its application by local management within the Northland District, and as a result, Semple is unable to establish a particular need for his broad discovery request. Thus, the district court did not abuse its discretion in denying Semple company-wide discovery.

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is **AFFIRMED**.

_____